**KINETIC INSTRUMENTS, INC., Plaintiff,**

v.

**Craig J. LARES, Defendant.**

**No. 92 Civ. 1194 (LBS).**

United States District Court, S.D. New York.

Aug. 25, 1992.

Levisohn, Lerner & Berger, New York City (Andrew S. Langsam, Thomas M. Furth, of counsel), for plaintiff.

Brooks Haidt Haffner & Delahunty, New York City (William R. Robinson, G.T. Delahunty, Charles G. Mueller, of counsel), for defendant.

## OPINION

SAND, District Judge.

■ Kinetic Instruments, Inc. (hereinafter "Kinetic") brings this action for patent infringement against Craig J. Lares (hereinafter "Lares"), the President of Lares Research, Inc. (hereinafter "Lares Research"). Kinetic alleges that its United States Patent Number 3,634,938 and Reexamination Certificate Number B1 3,634,938 (hereinafter collectively "the '938 Patent") for a dental handpiece were infringed by Lares' manufacture and sale of fiber optic dental handpieces under the trade designation Apollo prior to the patent's expiration on January 18, 1989. These alleged activities are the subject of an action against the corporation Lares Research, previously filed by Kinetic and pending in this Court, *Kinetic Instruments, Inc. v. Lares Research, Inc.*, 90 Civ. 8190 (LBS) (hereinafter "the corporate action"). In the present case, Kinetic asserts that Lares is personally liable for acts of infringement and inducing infringement of the '938 Patent under 35 U.S.C. § 271.[1] Plaintiff filed this action

on February 19, 1992. Defendant has moved to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, for summary judgment. Defendant also moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. While there has been discovery in the corporate action, no discovery has taken place in the present suit. For the reasons discussed below, defendant's motion to dismiss or for summary judgment is denied without prejudice to the making of another jurisdictional motion upon completion of all discovery. Defendant's motion for sanctions is denied.

## JURISDICTIONAL FACTS

Defendant Lares resides in the state of California. He is the President and majority shareholder of Lares Research, a California corporation which manufactures and sells dental handpieces and systems, and manufactured and sold the dental handpieces accused of patent infringement in the present case (hereinafter "the accused product"). Plaintiff alleges, and defendant does not appear to dispute, that the accused product was sold in the Southern District of New York.

Lares does not have a place of business in New York. He has attended the annual Dental Show in New York City, although he states that he was last present at the show in November 1984. *See* Affidavit of Craig J. Lares, March 12, 1992, ¶ 7 (hereinafter "Lares Aff. I"). Since that time, Lares has been present in New York on three occasions. In March of 1987, he met in New York with an inventor on a project unrelated to the accused product. Lares made two other trips to New York in 1991 in connection with the lawsuit pending against the corporation, Lares Research. *See* Lares Aff. I ¶ 8.

## DISCUSSION

A. *Standard of Review and Applicable Jurisdictional Law*

■■ Plaintiff bears the ultimate burden of establishing personal jurisdiction

---

**1.** A corporate officer may be held personally liable for patent infringement by the corporation under 35 U.S.C. § 271. *See Orthokinetics,* *Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1579 (Fed.Cir.1986); *see also* Section E *infra.*

over a defendant. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981); *Hvide Marine Int'l Inc. v. Employers Ins. of Wausau,* 724 F.Supp. 180, 182 (S.D.N.Y.1989). If jurisdiction is challenged prior to discovery, as is the present case, the plaintiff may defeat the motion by a good faith pleading of legally sufficient allegations. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

■■■ This court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a) and 35 U.S.C. § 281. In an action arising under a federal question, a federal court will look to the law of the state in which it sits to govern the question of personal jurisdiction, unless a federal statute specifically authorizes service of process on a party not an inhabitant of or found within the forum state. *See* Fed.R.Civ.P. 4(e); *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104–05, 111, 108 S.Ct. 404, 406, 413, 98 L.Ed.2d 415 (1987); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,* 869 F.2d 34, 40 (2d Cir.1989). Since there is no such authorization concerning patent infringement, New York law will control whether this Court can exercise personal jurisdiction over the defendant. *See Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 297 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1462 (D.Del.1991); *Gor–Vue Corp. v. Hornell Elektrooptik AB,* 634 F.Supp. 535, 536 (N.D.Ohio 1986).

**B.** *Assertion of Personal Jurisdiction over Lares under New York Law*

Plaintiff appears to assert three different theories for obtaining jurisdiction over the defendant: 1) Lares' personal contacts with New York subject him to jurisdiction here; 2) Lares Research is Lares' "agent" and its activities in New York are sufficient to subject Lares to jurisdiction here; and 3) Lares Research is the "alter ego" of the defendant, or other evidence justifies "piercing the corporate veil," so that the corporation's activities should be attributed to him, thereby subjecting him to jurisdiction in New York.

**1.** Lares' Personal Contacts With New York

■■■ The parties do not appear to dispute that all of Lares' contacts with New York were related to his position as an officer of the corporation, Lares Research. Until quite recently, the federal courts construing New York's jurisdictional rules had applied the fiduciary shield doctrine, which provides that a corporate employee sued in his personal capacity will not be subject to jurisdiction if his contacts with the forum state are solely on behalf of his corporate employer. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir. 1981); *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.,* 555 F.Supp. 305, 309 (S.D.N.Y.1983). However, in *Kreutter v. McFadden Oil Corp.,* the New York Court of Appeals found that prior New York state cases had "provide[d] no basis for development of the jurisdictional doctrine the Second Circuit attributed to it," and unequivocally held that the fiduciary shield doctrine may not be invoked to defeat jurisdiction over a corporate employee under the New York long-arm statute. *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 468, 472, 522 N.E.2d 40, 44, 47–48, 527 N.Y.S.2d 195, 199–200, 202 (1988).[2]

---

**2.** The Supreme Court has made clear that the fiduciary shield doctrine is not required by constitutional due process principles. In *Calder v. Jones,* 465 U.S. 783, 791, 104 S.Ct. 1482, 1488, 79 L.Ed.2d 804 (1984), the Court held that jurisdiction over nonresident employees of a corporation which was transacting business in the forum state was proper because the intentional conduct of the employees out of state was designed to cause injury in the forum. The Court stated:

> Petitioners are correct that their contacts with [the forum state] are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.

*Id.* at 790, 104 S.Ct. at 1487; *see also Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482 n. 13, 79 L.Ed.2d 790 (1984).

Therefore, it is clear that the defendant Lares will not be insulated from jurisdiction in New York simply because his contacts here were made in his capacity as an officer of the corporation, Lares Research. However, we conclude that plaintiff has not alleged sufficient personal contacts of Lares with New York to satisfy the jurisdictional requirements of New York law.[3]

Plaintiff asserts that this Court has jurisdiction over defendant on the basis of N.Y.C.P.L.R. § 302(a).[4] Under § 302(a)(1), a defendant who "transacts business" in state is subject to jurisdiction here. A single transaction is sufficient, even if the defendant never enters the state, "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d at 467, 522 N.E.2d at 43, 527 N.Y.S.2d at 198–99.

The Complaint alleges that defendant attended the Dental Show in New York for several years during the term of the '938 Patent. *See* Complaint ¶ 9. However, such attendance at trade shows has been held insufficient to satisfy the "transacting business" standard. *See Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons*, 495 F.Supp. 253, 257 (S.D.N.Y.1980). The Complaint further states that defendant "has sold within this district dental products : ... which infringe the '938 Patent." *Id.* However, in a general paragraph regarding jurisdiction, the plaintiff states: "[t]he cause of action stated herein is based upon the manufacture and sale of dental handpieces ... by defendant, Craig J. Lares, through a corporation which he controls ..." *See* Complaint ¶ 4. Thus, plaintiff does not appear to be alleging that Lares personally sold the accused product, and makes no allegation of any other personal transaction of business by Lares regarding the product. We find that plaintiff has not sufficiently alleged the personal transaction of business in New York by Lares so as to make jurisdiction proper under § 302(a)(1).

Section 302(a)(2) confers jurisdiction over a defendant who "commits a tortious act within the state." The courts have interpreted this provision to require

3. The relevant portions of New York Civil Practice Law & Rules provide:

§ 302. Personal jurisdiction by acts of non-domiciliaries

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

* * * * * *

4. While the Complaint also alleges jurisdiction over defendant on the basis of the New York C.P.L.R. § 301, *see* Complaint ¶ 6, this point is not discussed in plaintiff's brief, and it appears that plaintiff may have abandoned this argument. However, it is clear that defendant would not be subject to jurisdiction under § 301 based on his personal contacts with New York.

Section 301 provides that "[a] court may exercise jurisdiction over person, property, or status as might have been exercised heretofore." N.Y.C.P.L.R. § 301. Under this statute, a non-domiciliary may be subject to suit in New York on any cause of action even if unrelated to contacts in New York, if he "does business" in the state. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57–58 (2d Cir.1985); *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 352 (S.D.N.Y.1988). The defendant must do business "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915, 917 (1917); *accord Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982). Defendant's attendance at the New York Dental Show "from time to time," *see* Lares Aff. I ¶ 7, along with his few other visits to New York in the last several years, clearly do not satisfy the "doing business" standard for general jurisdiction under § 301.

that the defendant be physically present within the state while committing the tort. *See Dept. of Economic Dev. v. Arthur Andersen & Co.*, 747 F.Supp. 922, 929 (S.D.N.Y.1990); *Paul v. Premier Electrical Construction Co.*, 576 F.Supp. 384, 389 (S.D.N.Y.1983). Plaintiff has alleged no act of Lares while in New York that constitutes tortious activity, and therefore has made no showing that jurisdiction would be proper on this basis.

■ Section 302(a)(3) confers jurisdiction over any defendant who commits a tort outside the state causing injury in the state, and; either regularly does or solicits business in New York or derives substantial revenue from goods used in the state; or expects or reasonably should expect the tortious act to have consequences in the state and derives substantial revenue from interstate or international commerce. N.Y.C.P.L.R. § 302(a)(3); *Forgash v. Paley*, 659 F.Supp. 728, 731 (S.D.N.Y.1987). As discussed above, plaintiff has not alleged that Lares personally does or solicits business in New York, and while the Complaint states that Lares "personally profits" from Lares Research's business activities, plaintiff makes no claim that Lares personally derives substantial revenue from goods sold in New York. *See* Complaint ¶ 14. Plaintiff also does not allege that Lares personally derives substantial revenue from interstate commerce. Thus, plaintiff has not made an adequate showing that Lares meets the jurisdictional requirements of § 302(a)(3). We conclude that defendant's personal contacts with New York do not subject him to jurisdiction here.

### 2. The Corporation as the "Agent" of Lares in New York

■ Plaintiff further argues that the corporation, Lares Research, served as defendant's agent in New York, so that its activities here can subject him to jurisdiction under New York law. As discussed above, the abandonment of the fiduciary shield doctrine in New York has made it possible to obtain jurisdiction over a corporate officer or employee based upon his contacts in New York, even if his activities were performed solely in a corporate capacity. This clarification of the law in New York has also affected the related but somewhat different question presented here of whether jurisdiction may be obtained over an out of state corporate officer based upon the activities of the corporation in New York. At issue here is whether Lares Research may be considered the agent of a corporate officer, Lares, so that its New York contacts may be used to obtain jurisdiction over him in New York.

In *Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18 (2d Cir.1988), the Second Circuit addressed a situation similar to the one presented in this case. In that action, the plaintiff, a New York corporation, asserted, *inter alia*, tort claims against several individuals and a corporation associated with Software Centre International (hereinafter "SCI"), a California franchisor of computer software stores that was bankrupt at the time of the suit. *Id.* at 19–20. There was no dispute that SCI had transacted business in New York, but three out of state former SCI officers moved to dismiss for lack of personal jurisdiction. *Id.* at 20. The Court found that SCI had engaged in purposeful activity in New York by selling its franchises here, "with the consent and knowledge of the defendants, who both benefitted from those activities and exercised extensive control over SCI in the transaction underlying this suit." *Id.* at 22.

The Court then reviewed *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988), and found that the New York Court of Appeals' ruling discrediting the fiduciary shield doctrine "ha[d] even greater significance" for the question of whether a company subject to jurisdiction in New York could serve as an agent for individual out of state defendants, "so that its actions are attributable to them and support New York's assertion of jurisdiction over them." *Id.* 854 F.2d at 22 (quoting *Kreutter*, 71 N.Y.2d at 467, 522 N.E.2d at 44, 527 N.Y.S.2d at 199). *Kreutter* involved the activities of the McFadden Company, a company clearly subject to jurisdiction in New York, and among others,

an individual defendant in Texas, Eugene Downman. The New York Court of Appeals found that in order to obtain jurisdiction over Downman, the plaintiff did not need to establish a formal agency relationship between him and the company. *Id.* at 467, 522 N.E.2d at 44, 527 N.Y.S.2d at 199. The plaintiff "need only convince the court that McFadden Company engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of [Downman] and that [Downman] exercised some control over McFadden Company in the matter." *Id.*

On the basis of *Kreutter*'s holding, the Second Circuit concluded that a corporation can act as an agent for an individual for purposes of § 302(a)(1). *Retail Software,* 854 F.2d at 22. Concluding that the out of state individual defendants, like the one in *Kreutter,* were "primary actor[s] in the transaction ... in New York," and "not some corporate employee[s] [out of state] who played no part in it," the Court held that they were subject to jurisdiction under New York's long-arm statute. *Retail Software,* 854 F.2d at 22 (quoting *Kreutter,* 71 N.Y.2d at 470, 522 N.E.2d at 45, 527 N.Y.S.2d at 201).

■■■ Individual officers are not subject to jurisdiction in New York merely because jurisdiction can be obtained over the corporation here. However, with the abandonment of the fiduciary shield doctrine in New York, it is no longer necessary to "pierce the corporate veil," or find that the corporation is the "alter ego" of the individual officers in order to subject them to jurisdiction on the basis of the corporation's contacts here. *Kreutter* and *Retail Software* have established that individual corporate officers may be subject to jurisdiction in New York if it is established that

the corporation is acting as their agent here. However, a corporation is not necessarily the agent of a corporate officer simply by virtue of the officer's position with the company. As both *Kreutter* and *Retail Software* emphasized, the transaction at issue performed by the corporation here must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction. *See Kreutter,* 71 N.Y.2d at 467, 522 N.E.2d at 44, 527 N.Y.S. at 199; *Retail Software,* 854 F.2d at 22; *see also Soviet Pan Am Travel Effort v. Travel Comm., Inc.,* 756 F.Supp. 126, 130–31 (S.D.N.Y.1991) (applying *Kreutter* test to confer jurisdiction over nonresident corporate officers).

■■■ *Kreutter* and *Retail Software* both involved § 302(a)(1), the part of the New York long-arm statute which subjects a defendant to jurisdiction for a cause of action related to his transaction of business in the state. *See* N.Y.C.P.L.R. § 302(a)(1). However, *Kreutter* made clear that its holding applied to the entire long-arm statute, *see* 71 N.Y.2d at 468, 522 N.E.2d at 44, 527 N.Y.S.2d at 199, and we see no reason why a corporation may not serve as an agent for corporate officers under the other provisions of the statute.

■■■ The parties do not appear to dispute that Lares Research's activities within the state are sufficient to obtain jurisdiction over it under the provisions of § 302(a).[5] The question at issue here is whether plaintiff has made an adequate showing under *Kreutter* and *Retail Software* that the corporation served as the "agent" of defendant Lares for jurisdictional purposes.

The fact that Lares is the President and majority shareholder of Lares Research

---

5. It is not clear whether *Kreutter* is applicable to the general jurisdiction provision of N.Y.C.P.L.R. § 301. At least one court in this district, while noting that *Kreutter* was not decided in the context of § 301, has applied *Kreutter*'s agency test to this provision. *See Keramchemie GmbH v. Keramchemie (Canada) Ltd.,* 771 F.Supp. 618, 622 (S.D.N.Y.1991). We do not find it necessary to reach this issue here, however, for several reasons. As discussed above, plaintiff may have withdrawn this argument asserting jurisdiction on the basis of § 301. At any rate, we find that plaintiff has not sufficiently alleged that Lares Research is "doing business" in New York, within the meaning of § 301, so that Lares cannot be subject to jurisdiction on that basis, even if it is established that the corporation serves as his agent in New York.

does not necessarily mean that the corporation will be considered his agent. However, plaintiff alleges that Lares is involved in the day-to-day business operations of the corporation, including the manufacture and sale of the accused product. *See* Complaint ¶ 13. Plaintiff further alleges that Lares had "specific knowledge" of the '938 Patent and directed Lares Research to continue to manufacture and sell the accused product. *See* Complaint ¶¶ 12, 17. Plaintiff claims that Lares controls the corporation and is "directly responsible for decisions of Lares Research, Inc. to continue its business conduct of infringing on the '938 Patent." *See* Complaint ¶ 12. Finally, plaintiff alleges that Lares profits from Lares Research's business activities, including the sale of the accused product. *See* Complaint ¶ 14.

We find that plaintiff has made a legally sufficient claim that Lares Research served as Lares' agent in New York. Plaintiff has asserted that the alleged patent infringement occurred with Lares' knowledge and consent and for his benefit, and that he exercised control over Lares Research in the matter. We conclude that plaintiff has made a prima facie showing of jurisdiction over Lares on this basis.

3. "Piercing the Corporate Veil" of Lares Research

■■■■■ Plaintiff also asserts that Lares Research was so controlled by Lares that it was his "alter ego" for purposes of jurisdiction, and that actions by Lares to strip the corporation's assets to avoid liability justify "piercing the corporate veil" in order to obtain jurisdiction over Lares individually. It is clear that if a court has jurisdiction over a corporation, it may obtain jurisdiction over a corporate officer or shareholder by disregarding the corporate entity. *See Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed.Cir.1985); *see Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 638 (8th Cir.1975). The alter ego concept has been invoked as an exception to the fiduciary shield doctrine, allowing the courts to obtain jurisdiction over a corporate officer,

employee or shareholder. *See Marine Midland*, 664 F.2d at 903. As discussed *supra*, it is no longer necessary to disregard the corporate entity in order to obtain jurisdiction over a corporate officer. However, this court may still employ this concept as an alternative basis for jurisdiction.

■■■■■ In determining whether to disregard the corporate entity, "the critical question is whether the corporation is a "shell" being used by the individual share-owners to advance 'purely personal rather than corporate ends.'" *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir.1991) (citations omitted). The court may consider such factors as the lack of corporate formalities, the inadequate capitalization of the corporation, and the intermingling of corporate and individual finances. *See Wm. Passalacqua Builders*, 933 F.2d at 139; *Maritime Ventures Int'l Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340, 1348–49 (S.D.N.Y.1988). The corporate veil may be pierced either when the defendant has used the corporation to perpetrate fraud, or simply when he has dominated the corporation for his personal business. *See Itel Containers v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 703 (2d. Cir.1990).

■■■■■ One of the factors the courts have considered is whether there has been "[p]osttort activity ... conducted to strip the corporation of its assets in anticipation of impending legal liability." *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1264 (Fed.Cir.1985) (quoting 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 45 (rev. ed. 1983) (footnote omitted)). The existence of this activity, together with substantial ownership of stock of a corporation by one individual will support "piercing the corporate veil" for jurisdictional purposes on grounds of equity and fairness. *See Minnesota Mining*, 757 F.2d at 1264–65; *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 269–70 (D.Del.1989).

■■■■■ It is not disputed that the defendant is President of Lares Research and

owns over 70 percent of its shares. *See* Transcript of Proceedings, April 16, 1992, at 12. Plaintiff alleges that Lares "controls" the corporation. *See* Complaint ¶ 4. However, plaintiff has not made any allegations concerning inadequate capitalization of Lares Research, intermingling of the corporation's finances with those of the defendant or lack of corporate formalities. Moreover, Lares Research was incorporated in 1966, well before the '938 Patent was issued or the accused product was first manufactured or sold. *See* Deposition of Craig J. Lares, September 4, 1991, at 6, attached as Exhibit A to Defendant's Memorandum in Support of Motion to Dismiss or in the Alternative to Grant Summary Judgment and for Sanctions; Complaint ¶¶ 7–8; Lares Aff. I ¶ 4. Therefore, the corporation was clearly not established to perpetrate the alleged infringement.

 However, the court may use its equitable powers to pierce the corporate veil to prevent fraud and injustice. As the court in *Minnesota Mining* emphasized, when preserving the corporate entity would permit a shareholder to avoid legal liability, "this is precisely the situation in which courts feel most comfortable in using their equitable powers to sweep away the strict legal separation between corporation and stockholders." *Minnesota Mining,* 757 F.2d at 1265; *see also Mobil Oil Corp.,* 718 F.Supp. at 269–70. Here, the defendant was the dominant shareholder in the corporation. Plaintiff alleges that defendant told the Vice–President of Kinetic that even if Kinetic won the lawsuit against Lares Research, he "had taken measures to see that Kinetic will never get anything." *See* Affidavit of Kenneth S. Magid, Vice President of Kinetic Instruments, Inc., at ¶ 3 (hereinafter "Magid Aff."). Magid also states that in the same conversation, Lares said that "Any victory Kinetic might achieve will be a Pyrrhic victory." *See id.* Defendant denies that he made such statements, and further states that he has not taken any steps to frustrate or avoid the payment of any judgment arising out of the present case or the corporate action. *See* Affidavit of Craig J. Lares, April 14, 1992 ¶¶ 5–6 (hereinafter

"Lares Aff. II"). However, construing all allegations as true as we must for the purposes of this motion, we find that plaintiff has alleged sufficient facts to make a prima facie showing that the corporate entity should be disregarded, thus subjecting defendant to jurisdiction on this basis.

## C. *Constitutional Due Process*

 In order to establish personal jurisdiction over the defendant, the plaintiff must show that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In addition, plaintiff must show that the defendant "purposefully avail[s] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see also Asahi Metal Industry Co. v. Superior Ct.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). If the court finds that defendant has "purposefully availed" himself of the forum, it may also consider such other factors as: the burden on the defendant, the interests of the forum state, plaintiff's interest in obtaining relief, as well as judicial economy, and the "shared interest of the several States in furthering fundamental substantive social policies." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1032–33. We find that the contacts alleged by plaintiff here demonstrate "purposeful availment" by the defendant, and after a consideration of the other factors, we conclude that the assertion of personal jurisdiction over the defendant would not offend standards of constitutional due process.

**D. *Venue***

Venue in patent infringement actions is governed by 28 U.S.C. § 1400(b) which states:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

Defendant moves to dismiss the action because venue is improper under this provision.

■■■ Examining Lares' direct relationship to the district, it is clear that he does not satisfy the venue requirements of § 1400(b). Plaintiff concedes that Lares resides in California, *see* Complaint ¶ 3, so that venue is only possible under the second prong of the statute. Even assuming *arguendo* that defendant's activity constitutes the commitment of acts of infringement in this district, it is clear that plaintiff has not sufficiently alleged that Lares has a "regular and established place of business" here. Plaintiff has alleged only that Lares attended the annual Dental Show in New York for several years. *See* Complaint ¶ 9. A defendant must be "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." *IPCO Hospital Supply Corp. (Whaledent Int'l Div.) v. Les Fils d'Auguste Maillefer, S.A.*, 446 F.Supp. 206, 208 (S.D.N.Y.1978); *see also San Shoe Trading Corp. v. Converse, Inc.*, 649 F.Supp. 341, 345 (S.D.N.Y.1986). A "regular and established place of business" involves more than "doing business," and the mere presence of a sales representative is not sufficient. *See IPCO Hospital Supply Corp.*, 446 F.Supp. at 208; *see also Toombs v. Goss*, 768 F.Supp. 62, 64 (W.D.N.Y.1991). Therefore, Lares' attendance at the trade show, as well as his other trips to New York, do not meet the standards of a "regular and established place of business" under the patent venue statute.

■■■ Plaintiff further argues that venue is proper for Lares in this district because it is proper for Lares Research, which should be considered defendant's "alter ego." It is appropriate to pierce the corporate veil in order to establish venue under the patent venue statutes. *See Minnesota Mining*, 757 F.2d at 1265; *Max Daetwyler Corp. v. Imput Graphics, Inc.*, 541 F.Supp. 115, 117 (E.D.Pa.1982); *Kierulff Assoc. v. Luria Brothers & Co.*, 240 F.Supp. 640, 642 (S.D.N.Y.1965). First, plaintiff argues that defendant can satisfy the second alternative for venue under § 1400(b) because Lares Research has committed acts of infringement in New York and has a regular and established place of business here. However, plaintiff has failed to allege that Lares Research has a "regular and established place of business" in New York. There is simply nothing in the Complaint which asserts that Lares Research carries on business on a permanent basis in a physical location over which it has some control. Because the corporation does not satisfy the second alternative of the patent venue statute, it is not necessary to consider at this point whether the corporate entity should be disregarded for venue purposes.

■■■ However, plaintiff also argues that venue in this district is proper for Lares under the first alternative of § 1400(b), because the corporation, which "resides" in this district for purposes of the statute, is his alter ego. In *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed.Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991), the Court held that the 1988 amendment to 28 U.S.C. § 1391(c), the general venue statute for corporations, applied to § 1400(b), thus redefining the meaning of the term "resides" under that section. The amended Section 1391(c) states:

For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Because § 1400(b) is part of the same chapter as § 1391(c), the Court concluded that the amendment applied to § 1400(b) despite

the Supreme Court's ruling in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) that the earlier version of § 1391(c) did not affect § 1400(b). *VE Holding Corp.*, 917 F.2d at 1579. Therefore, under the patent venue statute, a corporation "resides" in every place in which it is subject to personal jurisdiction at the time the action is commenced. *Id.* at 1584. There appears to be no dispute that Lares Research is subject to jurisdiction here, and so it "resides" in the Southern District of New York for venue purposes.

▮ Plaintiff must then establish that Lares' relationship with the corporation justifies piercing the corporate veil and imputing the corporation's "residence" here to him. We have found that plaintiff has made an adequate prima facie showing that the court may "pierce the corporate veil" for jurisdictional purposes, and we find now that this showing is adequate to withstand the current motion to dismiss for improper venue as well.

## E. Jurisdictional Discovery

Plaintiff has made legally sufficient allegations that Lares Research served as defendant's agent in New York, and that the corporate entity may be disregarded for jurisdictional and venue purposes. At this preliminary stage in the litigation, this showing is adequate to defeat the present motion to dismiss for lack of jurisdiction and for improper venue, and in the alternative for summary judgment. However, we believe that jurisdictional discovery may shed light on such issues as the defendant's control over the corporation and his alleged manipulation of corporate assets which will be relevant to plaintiff's jurisdictional theories of agency and piercing the corporate veil, as well as to the determination of venue. Therefore, we deny defendant's motion without prejudice to bringing a jurisdictional motion upon the completion of discovery.

▮ It is axiomatic that the questions of liability and jurisdiction involve separate inquiries and concerns, and that liability should be considered only after it has been determined that a defendant is subject to the personal jurisdiction of the court. *See Kreutter*, 71 N.Y.2d at 470, 522 N.E.2d at 45, 527 N.Y.S.2d at 200. Therefore, for the purposes of this motion, we have made no inquiry into either the legal sufficiency or the merits of plaintiff's substantive claims. However, at times, the inquiries into jurisdiction and liability can become entwined, and it is clear that jurisdictional discovery will substantially overlap with general discovery in the present case.

▮ Under 35 U.S.C. § 271(a), "whoever without authority makes, uses or sells any patented invention ... infringes the patent." To hold a corporate officer personally liable for direct infringement under § 271(a), there must be evidence to justify piercing the corporate veil. *See Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 552 (Fed.Cir.1990); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed.Cir.1986). The court may find that the corporation was the alter ego of its officer, or more generally it may use its equitable powers to pierce the veil to prevent fraud or injustice. *Manville Sales*, 917 F.2d at 552. However, in order to disregard the corporate entity, it must be established that the officer had a "specific intent to escape liability for a specific tort." *Manville Sales*, 917 F.2d at 552 (quoting *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir.1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968)). A corporate officer will be held personally liable if he "personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics*, 806 F.2d at 1579.

▮ Under § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." A corporate official who actively aids and abets his corporation's infringements may be held personally liable under this provision, whether or not the corporation is the alter ego of the officer. *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed. Cir.1985); *Orthokinetics*, 806 F.2d at 1579. The defendant must have had specific in-

tent to encourage the corporation's infringement and not just knowledge of the acts alleged to constitute infringement. *Manville Sales*, 917 F.2d at 553. The plaintiff bears the burden of showing both that the defendant's actions induced infringing acts and that he knew or should have known that his actions would induce infringement. *Id.*

Discovery on issues involving the defendant's relationship to the corporation, and his control over corporate actions is relevant to the question of defendant's liability under § 271(a) and § 271(b), as well as to determinations of jurisdiction and venue. For these reasons, we believe that it is most efficient to combine discovery on the jurisdictional and liability issues. Any further jurisdictional motion may be made after the completion of all discovery.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction and improper venue, or in the alternative for summary judgment, is denied without prejudice to the making of a jurisdictional motion after completion of all discovery. Defendant's motion for sanctions is denied. The parties are to submit a proposed discovery schedule to the Court in writing no later than September 21, 1992.

SO ORDERED.