**DIMENSIONAL MEDIA ASSOCIATES, INC., Plaintiff,**

v.

**OPTICAL PRODUCTS DEVELOPMENT CORP., Kenneth Westort, and Douglas Robinson, Defendants.**

**No. 98 CIV. 6552(DC).**

United States District Court, S.D. New York.

March 25, 1999.

---

Brown Raysman Millstein Felder & Steiner LLP by Louis Greco, Henry J. Silberberg, Andrew Miller, New York, for Plaintiff.

Brown, Pinnisi & Michaels, P.C by Michael D. Pinnisi, Theodore Lyons Araujo, Ithaca, NY, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this patent infringement case, defendants move to dismiss the complaint or to transfer the action pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. For the reasons stated below, the motion is granted and the complaint is dismissed without prejudice to refiling in any district where venue would be proper.

## BACKGROUND

### A. The Facts

Dimensional Media Associates ("DMA") is a Delaware corporation with its principal place of business in New York City. (Compl.¶ 1). DMA is engaged in the business of designing, developing, manufacturing, licensing, selling, and leasing optical and three-dimensional display technology products. (*Id.*). DMA has obtained three patents relating to its optical technology. (*Id.* ¶ 10 and Exs. A, B, C). The patents were issued on February 7, 1989, May 10, 1994, and September 3, 1996. (*Id.*). To protect what it deems confidential information, DMA limits access to information concerning its business, operations, and technology to "those with a business need to know it." (*Id.* ¶ 12). Individuals who are given access to DMA's confidential information are required to sign confidentiality agreements. (*Id.*)

Defendant Optical Products Development Corporation ("OPD") is a corporation with its principal place of business, manufacturing facility, and executive offices in Elmira in the Western District of New York. (*Id.* ¶ 2; *see also* Westort Aff. ¶¶ 5–6, 12). OPD does not maintain offices in the Southern District of New York, nor has it retained agents to conduct business in the Southern District. (Westort Aff. ¶¶ 8–11, 13). Defendants Kenneth Westort and Douglas Robinson are part owners, officers, agents and/or representatives of OPD. (Compl.¶ 3). Westort and Robinson live in Tompkins County in the North-

ern District of New York. (Westort Aff. ¶¶ 3, 4). Both Westort and Robinson formerly worked for DMA—Westort was DMA's Vice President and Director of Optical Engineering from January 1995 through August 1996, and Robinson was a DMA consultant during "most of 1996." (Compl.¶¶ 3–4).

In 1994, Westort worked as a consultant for EMF Corporation, a company that had requested an evaluation of certain DMA products. (*Id.* ¶ 13). Pursuant to a Confidentiality and Nondisclosure Agreement that Westort signed in 1994 while working for EMF, Westort was given and had access to DMA's confidential information. In January 1995, when Westort became DMA's Vice President, Westort signed another Confidentiality and Nondisclosure Agreement. During his tenure with DMA, Westort continued to have access to confidential information about DMA. (*Id.*). In or about September 1996, Westort's employment with DMA was terminated purportedly because of unsatisfactory job performance. (*Id.* ¶ 14). Westort thereafter joined Robinson as part owner and officer of OPD.

Robinson also executed DMA's Confidentiality and Nondisclosure Agreement in 1996 when he was employed by DMA as a consultant. In that capacity, Robinson had access to confidential information concerning the company. (*Id.* ¶ 15). It is not clear when Robinson's employment as a consultant to DMA ended. In November 1996, however, Robinson incorporated OPD. (Greco Aff. Ex. B (Robinson Dep. at 13)). Thereafter, on December 11, 1996, OPD executed a work and license agreement with DMA whereby DMA agreed to purchase, own, and install equipment "designated by OPD" to be located at OPD's manufacturing facility in Elmira. (Compl.¶ 17). In exchange, OPD agreed to produce DMA's patented, optical mirror components. (*Id.* ¶ 17). The work and license agreement included "confidentiality and non-disclosure provisions," and OPD

was given and had access to DMA's confidential information pursuant to the agreement. (*Id.* ¶ 16).

When OPD allegedly "failed to provide mirrors [to DMA] according to agreed-upon schedules, the relationship [between OPD and DMA] was terminated." (Pl. Opp. at 6). Although DMA does not indicate when the parties' "relationship was terminated," OPD attests that the contractual relationship was terminated on January 16, 1998. (Defs. Reply Aff. ¶ 4).

### B. *Prior Proceedings*

Sometime prior to September 1998, DMA commenced an action in Supreme Court, New York County, alleging that OPD breached its contractual obligations to DMA, and asserting claims for non-performance, misrepresentation, and fraud with respect to the work and license agreement. (Compl.¶ 19). DMA filed this action on September 16, 1998, asserting claims for patent infringement, misappropriation of trade secrets, and unfair competition. The Supreme Court stayed DMA's suit *sua sponte* in light of the instant suit. (Greco Aff. ¶ 3).[1] The parties conducted discovery, limited to the issue of venue. This motion followed.

### C. *DMA's Patent Infringement Allegations*

DMA contends that on or about September 13, 1998, it became aware that OPD had placed an advertisement in the September 1998 edition of a trade publication entitled "Display & Design Ideas" for a product that "appears to be a mirror-image of products embodying DMA's Optical Display Technology." (Compl.¶ 20).

About the same time, DMA learned that OPD had displayed this product at a trade fair, representing that OPD was DMA's optical components supplier. Based on the prior relationship between the parties, the "strong similarity to DMA's products," and OPD's misrepresentations to potential DMA customers, DMA "reasonably ... inferred" that OPD was infringing DMA's patents and misappropriating DMA's confidential information. (*Id.*).

The complaint does not allege where the trade fair was held or where the trade publication was published, and there is no factual allegation in the complaint or in DMA's opposition to the motion that any of the infringing activities took place in the Southern District of New York.[2] Rather, DMA asserts that "[u]pon information and belief, Defendants have directly infringed, contributorily infringed, and induced infringement of ... DMA Patents by making, importing into the United States, offering for sale, selling, renting and using, in this District and elsewhere in the United States ... technology and products embodying the inventions claimed in DMA Patents." (*Id.* ¶ 23 (emphasis added)). There is no allegation as to when any of these alleged acts of infringement occurred.

### DISCUSSION

### A. *Applicable Legal Standards*

Venue in patent infringement actions is governed by 28 U.S.C. § 1400(b), which provides:

Any civil action for patent infringement may be brought in the judicial district

---

1. Defendants moved to transfer the state court action, which motion was denied in a hearing on November 2, 1998. (*See* Greco Aff. ¶ 3). It was at this hearing that the state court decided to stay the case in light of the instant matter. (*Id.*). In their memorandum of law, defendants contend that the state court action was stayed "upon motion of the defendants." (Defs. Mem. at 2).

2. In its opposition brief, DMA contends that it "first became aware of OPD's infringement through promotional materials appearing in a magazine circulated in the Southern District," citing ¶ 20 of the amended complaint. (*See* Pl. Opp. at 3 n. 1). The amended complaint contains no such allegation, however, and DMA offers no affidavit or declaration stating under oath or penalty of perjury that the magazine in question was indeed "circulated in the Southern District."

where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b). Hence, there are two possibilities for venue in a patent infringement case: (1) the district where the defendant "resides"; or (2) the district where the defendant has "committed acts of infringement" *and* has a regular place of business.

■ In determining where a corporate defendant "resides," the court looks to 28 U.S.C. § 1391(c), which provides that:

> [A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.

28 U.S.C. § 1391(c); *see also Exovir, Inc. v. Mandel*, No. 94 Civ. 3546, 1995 WL 413256, at *1 (S.D.N.Y. July 12, 1995) (holding that § 1391(c) applies to patent venue statue) (citing *Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976, 988 (S.D.N.Y.1992); *Rocket Jewelry Box, Inc.*

*v. Noble Gift Packaging, Inc.*, 869 F.Supp. 152, 155 (S.D.N.Y.1994)). For purposes of the patent infringement venue statute, then, a corporation "resides" in any district in which it is subject to jurisdiction, including, for example, any district in which it is subject to long-arm jurisdiction.

■ Section 1391(c) does not apply to individual defendants, however, and therefore venue in patent cases lies with respect to individual defendants only in the districts identified in § 1400(b). *See Mickowski v. Visi–Trak Corp.*, 36 F.Supp.2d 171, 176 (S.D.N.Y.1999) (finding venue proper as to corporate but not individual defendants); *Imagineering, Inc. v. Van Klassens, Inc.*, 797 F.Supp. 329, 332–33 n. 1 (S.D.N.Y.1992) (noting that if corporate officer were sued in individual rather than official capacity, "serious questions would be raised as to whether" individual defendant resides in same district as corporation).[3]

In determining whether venue is proper under the residence prong of § 1400(b) as to OPD, the Court must determine whether OPD was subject to personal jurisdiction in the Southern District of New York, treating the district as if it were a separate state. *See also Rocket*, 869 F.Supp. at 157 (explaining that where state has more than one judicial district, for venue to be properly laid defendant must be subject to personal jurisdiction in district where ac-

---

**3.** "Under limited circumstances, it may be appropriate to pierce the corporate veil to establish venue in a patent action." *CVI/Beta Ventures, Inc. v. Tura LP*, 905 F.Supp. 1171, 1200–01 (E.D.N.Y.1995), *rev'd and vacated in part on other grounds*, 112 F.3d 1146 (Fed.Cir. 1997); *see also Rates Tech. Inc. v. UTT Corp.*, 1995 WL 16788, at *2 (S.D.N.Y. Jan. 18, 1995) ("[A] corporation's residence should only be imputed to an officer of the corporation for purposes of § 1400(b) when a court would be justified in 'piercing the corporate veil' for jurisdictional purposes.") (quoting *Kinetic Instruments*, 802 F.Supp. at 987–88). New York courts, however, " 'are reluctant to disregard the corporate entity.' " *CVI/Beta Ventures*, 905 F.Supp. at 1201 (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594,

600 (2d Cir.1989)). There is some authority for the proposition that "venue for personal liability of a corporate officer/owner for acts of infringement by the corporation, whether or not the facts support piercing the corporate veil, may *reasonably* be based on the venue provisions for the corporation, 28 U.S.C. §§ 1400(b) and 1391(c)." *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed.Cir.1996) (emphasis added). The weight of authority in this district, however, is to the contrary. Indeed, the *Hoover* court itself acknowledged that "venue as to corporate employees charged with personal liability for acts taken as individuals, not as the alter ego of the corporation, does not flow automatically to forums in which venue is proper as to the corporation." *Id.*

tion was commenced as if district were separate state).

Personal jurisdiction over a non-resident defendant "is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir.1998) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)); *see also Pilates, Inc. v. Current Concepts*, No. 96 Civ. 0043, 1996 WL 599654, at *1 (S.D.N.Y. Oct. 18, 1996) (to determine personal jurisdiction in federal question case, court must apply forum's long-arm statute).

 Pursuant to New York's long-arm statute, personal jurisdiction may be asserted over a non-domiciliary corporation that, *inter alia*, "transacts any business within the state." N.Y. C.P.L.R. ("CPLR") § 302(a)(1).[4] The provision is a "single act statute" and requires only one transaction, even if the defendant never entered New York. *Rocket*, 869 F.Supp. at 156. Nonetheless, plaintiff must demonstrate that defendant purposefully availed itself " 'of the privilege of conducting activities within New York' (thus satisfying due process concerns), and that the ... causes of action 'arose out of' [the] activities within the state." *Henderson v. I.N.S.*, 157 F.3d 106, 123 (2d Cir.1998) (quoting *Kronisch*, 150 F.3d at 130). To prove that a cause a action arises from activities in the state, "[t]here must be 'an articulable nexus,' or a 'substantial relationship,' between the claim asserted and the actions that occurred in [the state]." *Kronisch*, 150 F.3d at 130 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40 (Ct.App.1988)).

 In determining whether personal jurisdiction exists, the court must construe the "complaint and affidavits ... in the

light most favorable to plaintiff." *Exovir*, 1995 WL 413256, at *1 (citing *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.Supp. 62, 64 (S.D.N.Y.1993)). The plaintiff bears the burden of establishing jurisdiction over a defendant by a preponderance of the evidence, but unless an evidentiary hearing is held, "the plaintiff " 'need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials' " to defeat the motion." *Kronisch*, 150 F.3d at 130 (quoting *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir.1988) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981))).

 If the requirements for venue are not met, a court "is constrained to dismiss the action, even where the result is inefficient or unfair." *CVI/Beta Ventures*, 905 F.Supp. at 1201. Indeed, section 1406(a) states that when venue is improperly laid, the district court "*shall* dismiss, or if it be in the interest of justice, transfer such case to any district or division in which [the case] could have been brought." 28 U.S.C. § 1406(a) (emphasis added).

### B. *Application*

DMA contends that venue is proper pursuant to CPLR § 302(a)(1) because OPD and its officers have been "present" in the Southern District of New York to: (1) "perform work for DMA"; (2) "execute nondisclosure agreements with DMA"; (3) "negotiate and execute the underlying work and license agreement"; and (4) "demand payments from DMA for machinery installed at OPD's Elmira plant under the parties' work and license agreement." (Pl. Opp. at 12).

Even assuming that defendants were "present" as DMA contends, and even if

---

4. Section 302(a) states that "[A] court may exercise personal jurisdiction over ... [a corporation that] transacts any business within the state or contracts anywhere to supply goods or services within the state." CPLR § 302(a)(1). Plaintiff relies only upon § 302(a)(1) of New York's long-arm statute in asserting that personal jurisdiction is proper in this case. (*See* Pl. Mem. at 12).

the record is construed in the light most favorable to DMA, venue in this district is improper. DMA simply has not made out a prima facie case that defendants either "reside[d]" in or "committed acts of infringement" within the Southern District of New York.

### 1. Residence

### a. OPD

■ Although OPD arguably transacted business in this district,[5] the causes of action asserted in this case simply do not arise from those transactions. I reach this conclusion for at least two reasons.

First, DMA fails to even identify what acts constitute patent infringement or other alleged wrongdoing in this case. In the complaint, DMA alleges only that it "reasonably has inferred that Defendants must be infringing" its patents and misappropriating its confidential information based on an advertisement DMA "learned of" in September 1998, and based on a conversation DMA also "learned" about "around the same time" wherein OPD allegedly told a "potential customer" that OPD was a supplier of DMA's optical components. (Compl. ¶ 20). DMA transforms these scant factual assertions into the following patent infringement allegation:

> Upon information and belief, Defendants have directly infringed, contributorily infringed, and induced infringement of one or more claims of one or more of the DMA Patents by making, importing into the United States, offering for sale, selling, renting and using, in this District and elsewhere in the United States, optical and three-dimensional technology and products embodying the inventions claimed in the DMA Patents, including but not limited to OPD's visual display products.

(Id. ¶ 23). DMA's other claims in this case are similarly pled "upon information and belief" and contain no factual basis for the alleged wrongdoing. (See id. ¶¶ 30–32, 34, 38–39). Because DMA fails to state any concrete particulars as to when, where, and how defendants infringed DMA's patents and/or engaged in other alleged wrongdoing, DMA fails to sustain its burden of showing that the alleged misconduct is substantially connected to the transaction of business by OPD in this district. DMA has simply not made out a prima facie case that the infringing acts arose out of the earlier transactions.

Second, the scant evidence that does exist in the record and DMA's conclusory allegations suggest that the claims asserted in this case do not arise out of the transactions in question. The transactions upon which DMA relies involved relationships among the parties that were terminated substantially before the commencement of this action. Indeed, the parties' contractual obligations under the work and license agreement are the subject of a separate state lawsuit. What little evidence there is in the record shows that there is no substantial connection between these prior relationships and the acts alleged in the complaint but that, rather, the alleged infringement—the manufacturing, advertising, and distributing of allegedly infringing products—occurred after those relationships were terminated.

Although the original transactions provide background, the allegedly infringing acts and other allegedly unlawful acts are independent acts as to which there must be an independent basis for jurisdiction and venue. Under these circumstances, DMA cannot merely rely on the parties' prior contractual relationship to assert that this Court has personal jurisdiction over OPD for its patent infringement or other claims. *See Interface Biomedical*

---

5. The purported transactions consist of the creating of employment and work arrangements between DMA and Westort and Robinson in 1995 and 1996, which arrangements included the signing of confidentiality agreements, the signing of the work and license agreement with OPD in 1996, as well as the sending of bills and purchase orders pursuant to the parties' agreement. (Compl. ¶¶ 13–17; *see generally* Greco Aff. Exs. A & B).

*Lab. v. Axiom Med., Inc.,* 600 F.Supp. 731, 737 (S.D.N.Y.) (noting that "courts have uniformly held that jurisdiction will not lie under § 302(a)(1) ... [for] alleged misappropriation of intellectual property occurr[ing] after ... the contract was breached"); *American White Cross Lab, Inc. v. H.M. Cote, Inc.,* 556 F.Supp. 753, 759 (S.D.N.Y.1983) (holding that trademark infringement action allegedly based upon a joint venture "cannot be regarded as 'arising from' that transaction of business; the joint venture no longer exists"). OPD's "presence" in the Southern District was merely "a link in the chain of events leading to the claim for which relief is sought." *Xedit Corp. v. Harvel Indus. Corp., Fidelipac,* 456 F.Supp. 725, 729 (S.D.N.Y.1978) (holding that claim for misappropriation of trade secrets did "not arise out of defendant's forum activities"). Even assuming Westort and Robinson acquired the alleged confidential information in the Southern District of New York, the allegedly infringing acts occurred later, after the relationships had been terminated, and after defendants' "presence" in the Southern District of New York had ended.

DMA conclusorily asserts, however, that "courts have found personal jurisdiction over defendants in patent infringement cases with facts similar to this one .... and contractual relationships ... constitute sufficient grounds for personal jurisdiction" in patent infringement cases. (Pl. Opp. at 10, 11). The cases DMA cites to support this proposition are, however, inapposite. Indeed, none of the five cases cited by DMA are even from this circuit. Moreover, these cases are factually and legally distinguishable.

For instance, DMA cites a 1984 Minnesota case and a 1995 Kansas case to support its contention that "courts have found personal jurisdiction over defendants in patent infringement cases with facts similar to this one." Neither case is similar. The court's holding in *Network Sys. Corp. v. Masstor Sys. Corp.,* 612 F.Supp. 438, 439 (D.Minn.1984), was based on a long-arm statute that, unlike New York's long-arm statute, extends "jurisdiction of Minnesota's courts to the maximum limit consistent with due process." 612 F.Supp. at 439. Moreover, *Network* involved a claim for breach of contract, and it appears that the acts constituting the alleged infringement were stated with greater specificity. *Id.* Contrary to DMA's characterization, *Pehr v. Sunbeam Plastics Corp.,* 874 F.Supp. 317 (D.Kan.1995), was *not* a patent infringement suit. Rather, it was a breach of contract action where jurisdiction was based on diversity of citizenship. 874 F.Supp. at 318, 319.

Hence, OPD does not "reside" within the Southern District of New York for purposes of venue in this case.

### b. *Westort and Robinson*

It is undisputed that Westort and Robinson do not reside in the Southern District of New York, but that they both reside in the Northern District. Hence, venue does not lie in this district as to them under the "residence" prong of § 1400(b).

Moreover, even assuming that venue were proper as to OPD on the basis that OPD had transacted business within the district and that the claims arose from those transactions, I would still conclude that venue as to the individual defendants would not be proper. There is no allegation that Westort and/or Robinson commingled corporate assets and personal accounts, undercapitalized OPD, or otherwise disregarded OPD's corporate form. There would be no basis upon which to conclude, therefore, that OPD is merely a shell being used by Westort and Robinson to advance purely personal rather than corporate ends. Thus, even if venue were proper as to OPD, it could not be imputed to these individuals. *See generally Rates,* 1995 WL 16788, at *2; *Kinetic Instruments,* 802 F.Supp. at 985.

### 2. Acts of Infringement

#### a. OPD

██ DMA has not alleged either that OPD committed any acts of infringement within the Southern District of New York or that it maintains a regular and established place of business here. As defendants' affidavit demonstrates, OPD does not maintain offices or manufacturing facilities here; it does not employ agents or other individuals here; it has not solicited, delivered, or sold the allegedly infringing products here; and it has not entered into any contracts for the sale of allegedly infringing products here. (*See* Westort Aff. ¶¶ 7–23). Although DMA has had the opportunity to conduct discovery on these issues, it has presented no evidence to contradict defendants' showing that they did not commit any arguably infringing acts in this district. DMA's conclusory assertion upon information and belief that OPD is infringing DMA's patents here and elsewhere in the United States does not suffice. DMA does not allege that the advertisement of the allegedly infringing products reached the Southern District. Nor does DMA allege that the trade show at which OPD purportedly made misrepresentations about the allegedly infringing products took place in the Southern District. Thus, venue fails as to OPD on the basis of acts of infringement.

#### b. Westort and Robinson

Likewise, DMA has neither alleged nor proven that either Westort or Robinson committed any acts of infringement or maintained a regular and established business in this district. Hence, venue fails as to these defendants on this basis as well.

#### CONCLUSION

For the reasons stated herein, defendants' motion to dismiss the complaint for improper venue is granted. The complaint is dismissed, without prejudice to re-filing in any district where venue would be proper. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.