**John R. MICKOWSKI, Plaintiff,**

v.

**VISI–TRAK CORPORATION, John R. Vann, Jack Branden, and Ying Shen Defendants.**

No. 94 Civ. 6088(JES).

United States District Court, S.D. New York.

Feb. 3, 1999.

**173**

Kaplan & Gilman, L.L.P., Woodbridge, NJ (Jeffrey I. Kaplan, of counsel), for Plaintiff.

Graham & James LLP, New York City (Stephen N. Weiss, Adam B. Landa, of counsel), for Defendants.

## OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff John R. Mickowski ("Mickowski") commenced this action for patent infringement pursuant to 35 U.S.C. § 271 against defendants Visi–Trak Corporation ("Visi–Trak"), John R. Vann ("Vann"), Jack Bran-

den ("Branden"), and Ying Shen ("Shen"). Mickowski is the inventor and owner of U.S. Patent No. 4,504,920 (the "'920 patent") and U.S. Patent No. Re. 34, 559 (the "'559 patent"). Mickowski alleges that defendants have willfully induced infringement of the '920 patent and the '559 patent and seeks an award of damages and declaratory and injunctive relief. This action having been tried to the Court without a jury, and the Court having considered the evidence presented at trial, as well as the argument of counsel at trial and in the memoranda of law prepared by counsel, the Court finds that Visi–Trak has willfully induced infringement of both the '920 patent and the '559 patent in violation of 35 U.S.C. § 271(b) and is liable to Mickowski for trebled damages pursuant to 35 U.S.C. § 284 and for Mickowski's reasonable attorney fees in the prosecution of this action pursuant to 35 U.S.C. § 285. The Court further finds that Mickowski is entitled to permanent injunctive relief enjoining Visi–Trak from further infringing activities. The Court dismisses Mickowski's claims against Branden and Shen for lack of personal jurisdiction and for improper venue, and against Vann for improper venue. The following constitutes the Court's findings of fact and conclusions of law.

## BACKGROUND

### The Parties

Mickowski is the owner of U.S. Patent 4,504,920, which issued on March 12, 1985 and of U.S. Patent No. Re. 34,559, which issued on March 8, 1994. Visi–Trak, an Ohio corporation located in Cleveland, Ohio, engages in the manufacture and sale of die casting monitoring systems. The individual defendants, Vann, Branden, and Shen, are each officers, shareholders, and employees of Visi–Trak. Vann is president and the principal shareholder of Visi–Trak. Branden is vice president of sales and marketing. Shen is vice president of engineering.

### The Patents in Suit

Mickowski alleges that defendants have induced infringement of claim 1 of U.S. Patent No. 4,504,920 and claim 28 of U.S. Patent No. Re. 34,559. The patents in suit relate to the technology for monitoring die casting or injection molding manufacturing processes in which machine operators depend upon data from equipment sensors to alert them to possible product defects and to ensure uniformity in the manufacturing process. In die casting, for example, this technology allows operators to monitor the consistency of each die casting cycle or "shot." In a die casting machine, molten metal is poured into a cylinder, and a piston, referred to as a "ram" or "plunger" moves through the cylinder and forces the metal to the end of the cylinder. There the metal fills a mold or die in the shape of the product to be made. The metal cools and hardens in the mold. Then, the mold opens, releasing the formed product. The ram retracts and the mold closes, and the cycle is then repeated.

The patents in suit claim methods for the graphical display of specific types of data generated during the die casting process. Claim 1 of the '920 patent claims a method of plotting and graphically displaying the incremental velocity of the ram and the ram pressure as a function of ram position for each ram cycle.[1] The stroke length traversed by

---

1. Claim 1 of the '920 patent states as follows:

A diagnostic method for analyzing and monitoring the process parameters of a die casting operation in which a linear reciprocating injection device is traversed over a fixed stroke length at high speed comprising the steps of:
(a) dividing said stroke length into a predetermined multiple number of incremental positions;
(b) generating analog data corresponding to at least the position of said injection device and the pressure developed by said injection device at each such incremental position;
(c) recording the time transpired in the movement of said injection device along said stroke length;

(d) calculating the velocity of said injection device at such incremental position by dividing the traversed distance between incremental positions with the transpired differential in time between said positions;
(e) graphically displaying the data corresponding to pressure and velocity on a display screen of a cathode ray tube as a function of the incremental position of said injection device along said stroke length until said velocity reaches a predetermined minimum level, with said display forming a master profile for said data;
(f) storing the data representing said master profile at a predetermined address location in a nonvolatile memory of a microcomputer;

the ram during each shot is divided into a number of incremental positions, each of which is a data collection point. At each incremental position, sensors on the die casting machine transmit data regarding ram position and pressure to a computer. The computer then calculates ram velocity by tracking the time between each incremental reading of ram position. The computer displays on a cathode ray tube ("CRT") a graph of velocity and pressure as a function of position. If the die cast product is acceptable, this graph may be stored in the memory of the computer as a master graph. When the machine operator runs future shots on the machine, the computer recalls from memory the stored master graph and displays this graph simultaneously with the graph for the current shot so that the machine operator may monitor the machine's performance. If the current graph varies significantly from the master graph, then the operator may adjust the machine to avoid product defects.

Claim 28 of the '559 patent claims a method for graphically displaying a combination plot of data collected during each shot.[2] During a shot, the ram will first move at high speed as metal is forced into the die. Then the ram slows and nearly stops as almost all the metal has been forced into the die. The method claimed in claim 28 accounts for these two distinct phases of the shot by displaying different graphs for the two phases of the shot. During the first phase of the shot, pressure is plotted as function of ram position. Then, at a predetermined point in the shot, the computer changes the method of plotting and displays pressure graphed as a function of time. Both graphs are displayed for each shot, allowing the operator to monitor changes in pressure through the entire shot.

Visi–Trak manufactures a computer monitoring and analysis system for the die casting industry. The sales literature and software manual provided by Visi–Trak for this computer monitoring system demonstrate how the monitoring system may be used to practice the monitoring methods taught by claim 1 and claim 28. Although the Visi–Trak computer monitoring system may be used to practice monitoring methods other than the methods taught by claim 1 and claim 28, the sales literature and software manual demonstrate that a primary use for the computer monitoring system is to practice the methods taught by claim 1 and claim 28. These documents describe and specify the methods taught by claim 1 and claim 28 and direct purchasers of the equipment to practice these methods. Visi–Trak has sold the computer monitoring system to customers in the United States during the term of the patent, and purchasers of the system have used the

---

2. Claim 28 as set forth below is actually a stipulated version of both claims 26 and 28 of the '559 patent. Because claim 28 is a dependent claim upon claim 26, the parties drafted the stipulated language set forth below to simplify for trial the issue of claim interpretation. The stipulated claim states as follows:

A method for monitoring a reciprocating apparatus including a ram and for electrically generating a graphical representation of results of said monitoring, said ram traversing a stroke path at high speed during a ram cycle to produce pressure, said stroke path having an end, said method including the following steps:

(a) providing a time base;

(b) measuring position of said ram for a first ram cycle;

(c) measuring pressure produced by said ram for said first ram cycle;

(d) determining when the ram reaches the end of said stroke path;

(e) electrically generating a first graphical representation of pressure versus position of said ram for said first ram cycle based on said measured ram position and said measured pressure by representing said pressure versus position for said moving ram; and

(f) electrically generating a second graphical representation of pressure versus time for said first ram cycle based on said measured ram pressure and said time base, including representing said pressure versus time for pressure existing after said ram has reached the end of said stroke path and including the step of facilitating substantially simultaneous viewing of said first and second graphical representations.

(g) repeating the sequence of generating, calculating, and storing analog data corresponding to pressure and velocity as a function of stroke position for a second die casting operation to form a current profile of such data for such second operation; and

(h) displaying said current profile on said display screen with said master profile for diagnostic comparison purposes.

system in the United States to practice the methods taught by claim 1 and claim 28.

In 1994, Mickowski contacted Visi–Trak and requested that Visi–Trak enter into negotiations for a patent licensing agreement under which Visi–Trak would pay Mickowski a royalty from sales of its monitoring system. Failing to reach an agreement, Mickowski commenced the instant action.

## DISCUSSION

### Jurisdiction and Venue

Because this action involves claims arising under the patent laws of the United States for infringement of United States Letters Patent, this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1338(a) and 35 U.S.C. § 281. In an action arising under federal law, this Court will ordinarily look to the law of the forum state to determine whether the Court may exercise personal jurisdiction over the defendants. *See* Fed.R.Civ.P. 4(e); *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104–105, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). New York law controls the question of personal jurisdiction in this action; venue is governed by 28 U.S.C. § 1400(b).

Visi–Trak has waived any defense that this Court lacks personal jurisdiction over Visi–Trak or that venue in this District is improper by failing to assert personal jurisdiction and venue as disputed questions in the parties' Joint Pre–Trial Order. The Court deems the waiver of these defenses by Visi–Trak as an admission that Visi–Trak has engaged in sufficient contacts with the State of New York and this District to support a finding of both personal jurisdiction and venue by this Court.

■ Unlike Visi–Trak, however, the individual defendants Vann, Branden, and Shen have raised the defenses of personal jurisdiction and venue. The Court finds that the individual defendants are nonetheless bound by the admission by Visi–Trak that personal jurisdiction and venue are proper at least as to the corporation. The individual defendants are in privity with the corporation as its officers and shareholders, and it is undisputed that defendants directed the infringing activities of Visi–Trak. Vann, Branden, and Shen thus cannot, and indeed have made no attempt to, dispute that Visi–Trak has maintained sufficient contacts with the State of New York and this District to support both personal jurisdiction and venue as to the corporation.

■ The Court further finds that, for purposes of establishing personal jurisdiction over the individual defendants, Visi–Trak has acted as the agent of Vann in its contacts with the State of New York and this District. Vann admitted at trial his personal knowledge of the patents in suit. In addition, he admitted that he controls the affairs of Visi–Trak and was responsible for the decision to continue manufacture and sale of the Visi–Trak monitoring system after Mickowski first asserted claims of patent infringement. As an officer and principal shareholder of Visi–Trak, Vann has profited from the sales of the Visi–Trak monitoring system. These facts are sufficient to find that, in its contacts with the State of New York and this District, Visi–Trak has acted as the agent of Vann, such that personal jurisdiction is proper at least against Vann, if not Branden and Shen. *See Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988); *Retail Software Services, Inc. v. Lashlee,* 854 F.2d 18 (2d Cir.1988); *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 983–85 (S.D.N.Y.1992).

■ These contacts, however, are insufficient to establish venue as to any of the individual defendants. As previously noted, venue in this action is governed by 28 U.S.C. § 1400(b), which states in relevant part that an infringement action "may be brought in any district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." To establish venue in a district in which the defendant does not reside, plaintiff must show that the defendant both committed acts of infringement in the district and maintains a place of business in the same district. Because neither Vann nor Branden nor Shen reside in this District or maintain a place of business in this district, venue clearly cannot lie in this District as to

the individual defendants. Thus, the Court dismisses Mickowski's claims against Vann, Branden, and Shen for improper venue.

### Claim Construction

 Prior to analyzing validity or infringement, the Court must first determine the proper construction of the claims alleged to be infringed. Claim construction is a question of law. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977–79, aff'd. 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). To interpret the claims of a patent, the Court considers the language of the claims in light of the patent's specification, the prosecution history, and, in appropriate cases, extrinsic evidence. *See id.* at 979–81. A court will ascribe to the language of a claim the meaning that one skilled in the art would ordinarily ascribe to the claim language unless the inventor sets forth a specific different meaning in the specification. *See Fromson v. Advance Offset Plate. Inc.,* 720 F.2d 1565, 1571 (Fed.Cir.1983); *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387–88 (Fed.Cir.1992).

Claim 1 of the '920 patent

 The construction of the claims at issue is largely undisputed by the parties.[3] As described above, claim 1 of the '920 patent claims a method of monitoring certain parameters of a die casting operation in which a reciprocating injection device—the ram— moves at high speed with a fixed stroke length. The fixed stroke length of the ram is divided into a predetermined number of incremental positions. At each incremental position, sensors generate analog data corresponding to the position of the ram and the pressure generated by the ram. At the same time, the time required for the ram to move from one incremental position to the next is recorded, and the velocity of the ram is calculated by dividing the distance between the incremental positions by the time required by the ram to traverse that distance.

Data corresponding to pressure and velocity is then graphically displayed on a CRT as a function of the incremental position of the ram along the stroke length until the ram reaches a "predetermined minimum level." This display forms a master profile that is stored in the nonvolatile memory of a microcomputer. The steps of generating, calculating, and storing analog data corresponding to pressure and velocity as a function of ram stroke position are repeated for a second die casting cycle to form a current profile. Finally, both the master and the current profile are displayed on the CRT for diagnostic comparison.

Although Visi–Trak failed to raise this issue as a question of law in the parties' Joint Pre–Trial Order, Visi–Trak's counsel suggested at trial that the parties disputed the meaning of the term "predetermined minimum level" in step (e) of claim 1, which calls for the graphical display of pressure and velocity data until the ram velocity reaches a "predetermined minimum level." Specifically, Visi–Trak's counsel argued that this claim language would read upon a monitoring process which displayed this data for the entire ram stroke length and did not include the step of stopping the display at a predetermined minimum velocity, because, as counsel explained, "if you graphically display the whole thing, then you have graphically displayed until said velocity reaches the predetermined minimum level, and then you have displayed more." *See* Tr. at 64.

Even if Visi–Trak has not waived this argument by failing to include this issue in the Joint Pre–Trial Order, the Court finds this construction unpersuasive. Claim 1 clearly calls for the comparison of ram velocity at each incremental position with a predetermined value, and upon reaching the velocity equal to that predetermined value, terminating the process of generating, calculating, and displaying pressure and velocity data for the die casting shot. A process that does not

---

**3.** Indeed, although plaintiff exhaustively briefed the question of claim construction, Visi–Trak filed no memorandum of law on the issue of claim construction and never attempted to rebut plaintiff's construction of the claims at issue in Visi–Trak's post-trial brief or in Visi–Trak's clos-

ing argument before the Court. Thus the Court is left to sift Visi–Trak's cross examination of the witnesses at trial for intimations of Visi–Trak's interpretation of the claims and the basis for Visi–Trak's interpretation.

include this step will not literally infringe claim 1.

## Claim 28 of the '559 patent

The stipulated claim 28 claims a method for monitoring and graphically displaying pressure and position data for a reciprocating apparatus that includes a ram that traverses a stroke path at high speed during each cycle of the ram to produce pressure. The method claimed requires the provision of a time base and the measurement of both ram position and pressure as the ram moves through the ram cycle. When the ram reaches the end of the stroke path, a graphical display of pressure as a function of ram position is electrically generated. Then, a second graphical display of pressure as a function of time is electrically generated for that portion of the ram cycle after the ram has reached the end of the stroke path. Both the first and second graphical displays are displayed in such a manner as to permit "substantially simultaneous" viewing of the displays.

The parties' Joint Pre–Trial Order sets forth three issues of construction with respect to the language of claim 28. First, the parties dispute the meaning of the phrase "determining when the ram reaches the end of [the] stroke path" in step (d). Second, the parties dispute the meaning of the phrase "substantially simultaneous viewing" in step (f). Third, the parties dispute whether claim 28 reads upon a method that produces a printed graphical representation upon a sheet of paper rather than a electrical graphical display upon a CRT. Because neither Mickowski nor Visi–Trak presented to the Court evidence of a prior art or infringing process that employs printed graphs rather than CRT displays for graphing combination plots of pressure as a function of both ram position and time, the Court declines to reach the third of these issues of construction and confines itself to the first two issues raised by the parties.[4]

■ The Court rejects Visi–Trak's argument that the claim language "determining when the ram reaches the end of [the] stroke path" reads upon a method by which a person simply observes the graphical display of pressure versus position and notes mentally the point at which the graph ceases to indicate a change in ram position. First, the step of determining the end of the stroke path precedes the step of generating the graph of pressure versus position; thus no graph has been generated at the time that the end of the stroke path must be determined. Second, identification of the end of the stroke path is essential for generating the graphs to be observed. Claim 28 requires that pressure be graphed as a function of time beginning at the moment the ram reaches the end of the stroke path. Thus, data indicating the end of the stroke path must be input into the device that electrically generates the graphical displays. A human observer watching the graphical display is clearly incapable of practicing the step of "determining when the ram reaches the end of [the] stroke path" as taught by claim 28.

■ As to the second issue of claim construction, the Court finds the phrase "substantially simultaneous viewing" unambiguous and rejects Visi–Trak's argument that the claim language reads upon a process that would not permit one practicing the method to view simultaneously both the first and second graphical representations for a single shot. The term "substantially" is a term of art used by the drafters of patent claims and must be interpreted in light of the specification and prosecution history. In this case, it is clear that the term "substantially" has been included merely to bridge the gap between the abstract description of a method and its practical application in the real world. The term adds nothing to the claim, and it would be error for this Court to adopt Visi–Trak's suggestion that "substantially simultaneous" means "not simultaneous." The prosecution history makes clear that simulta-

4. Visi–Trak introduced into evidence the Nicolet Operation Manual for the Series 2090 Digital Oscilloscope as evidence of anticipation. *See* Def. Exh. L. Although page 11b–6 of the manual does explain how the oscilloscope may be attached to a printer to print graphical displays, Visi–Trak introduced no evidence that the oscilloscope had ever been used to print combination plots of pressure as a function of both ram position and time as taught by claim 28 or that anyone had even contemplated such a use of the scope prior to Mickowski's invention.

neous display of pressure plotted as a function of position and pressure plotted as a function of time for the same shot was considered essential by the Patent Examiner to distinguish Mickowski's invention from the prior art.

## Validity

■ Visi–Trak asserts that the patents in suit are invalid under 35 U.S.C. § 102(a) as anticipated by the prior art. Anticipation under 35 U.S.C. § 102 requires the disclosure of a single piece of prior art embodying each and every limitation of a claimed invention. *See Electro Medical Systems. S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1052 (Fed.Cir.1994). In other words, anticipation requires that the identical invention that is claimed was previously known to others. *See Continental Can Co. USA, Inc., v. Monsanto Co.,* 948 F.2d 1264, 1267 (Fed.Cir.1991). Disclosure requires knowledge or use of the prior art be available to the public. *See Carella v. Starlight Archery,* 804 F.2d 135, 139 (Fed.Cir.1986). Defendants bear the burden of proving the invalidity of the patents in suit by clear and convincing evidence. *See National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1189 (Fed.Cir.1996).

■ A prior art reference may serve as an anticipation of the patented invention even where the reference is silent about a particular characteristic of the invention, if extrinsic evidence establishes that the characteristic is inherent in the reference. *See Continental Can,* 948 F.2d at 1268. However, the extrinsic evidence must clearly establish that the missing characteristic is necessarily present in the reference and that a person of ordinary skill in the art would recognize the characteristic as inherent in the reference. *See id.* Defendants have failed to prove by clear and convincing evidence that either claim 1 or claim 28 was anticipated by the prior art. In fact, defendants have presented no credible evidence to support their defense of anticipation.

Defendants introduced evidence that in the late 1970s and early 1980s, die casting manufacturers began to experiment with computer monitoring systems attached to sensors on the die casting equipment. These persons experimented with various methods of graphically displaying the data generated by these sensors to facilitate analysis of the data by machine operators. Among the methods employed was the plotting of data on a Cartesian plane displayed on a CRT.

One of the entities performing such monitoring was Hewlett Packard in Palo Alto, California. Defendants claim that Hewlett Packard's engineers practiced the methods claimed by the patents in suit. Defendants' evidence, however, shows that Hewlett Packard experimented only with methods for monitoring the velocity of the ram during the ram cycle. No one at Hewlett Packard attempted to plot pressure as a function of position and pressure as a function of time for the same shot of a die casting machine. Nor is there any evidence that anyone at Hewlett Packard attempted to perform a substantially simultaneous display of these plots or make an affirmative determination of the end of the stroke path as taught by claim 28. Defendants offered no evidence of any other prior art that would have conveyed to a person skilled in the art the method taught by claim 28. In addition, no one at Hewlett Packard recognized the advantage of plotting pressure and velocity as a function of position for a single die casting cycle, plotting the same parameters for another cycle of the machine, and then comparing those plots "until a predetermined minimum," as taught by claim 1. No one at Hewlett Packard ever attempted to monitor die casting cycles in this manner. Indeed, the arrangement of monitoring equipment used by Hewlett Packard could not be used to practice the methods taught by claim 1 and claim 28, for Hewlett Packard utilized a system which plotted velocity as a function of position *or* velocity and position as a function of time.[5]

Thus, the subject matter of claim 1 and claim 28 was not known in the prior art, and

---

5. Defendants argue that the manual for the Nicollet scope shows all of the elements of the claims. However, the manual does not in any way suggest which die casting parameters should be monitored or how to monitor these parameters.

the Hewlett Packard system was insufficient to place the subject matter in the possession of one of ordinary skill in the art. It follows that defendants have failed to prove by clear and convincing evidence that claim 1 and claim 28 were anticipated by the prior art.

## Infringement

### Infringement by Visi–Trak

Claim 1 of the '920 patent and claim 28 of the '559 patent are method claims that can be directly infringed only by someone who generates the graphical displays invented by Mickowski. Mickowski does not allege that defendants have directly infringed the patents in suit; rather he alleges that defendants are liable under 35 U.S.C. § 271(b) for inducing direct infringement of the patents in suit by purchasers of the Visi–Trak die casting monitoring system.

■ Section 271(b) provides that "whoever actively induces infringement of a patent shall be liable as an infringer." Under § 271(b), a defendant who actively and knowingly aids and abets another's direct infringement is liable for infringement. *See Water Technologies Corp. v. Calco Ltd.,* 850 F.2d 660, 668 (Fed.Cir.1988). Although proof that a defendant has actively induced infringement requires proof that another has directly infringed the patent in suit, such direct infringement may be established by circumstantial evidence of extensive sales by defendant of a product capable of use to practice the patented method and distribution by defendant of an instruction manual teaching the patented method. *See Moleculon Research Corp. v. CBS. Inc.,* 793 F.2d 1261, 1272 (Fed. Cir.1986). Plaintiff must also prove that the defendant acted with knowledge of the patent infringed. *Water Technologies,* 850 F.2d at 668.

■ The Visi–Trak sales literature and product manual for the Visi–Trak monitoring system clearly encourage purchasers of the Visi–Trak system to use that system to practice the methods taught by claim 1 and claim 28. The evidence also established that purchasers of the Visi–Trak system in fact used the system to practice the methods taught by claim 1 and claim 28 and that Vann, the president of Visi–Trak, first examined

the '920 patent no later than 1989. The evidence also establishes that both Branden, the vice president of marketing, and Shen, the vice president of engineering, continued to direct and oversee the distribution and sale of the Visi–Trak system after they learned of the patents in suit. Thus, Visi–Trak is liable for inducing infringement of the patents in suit.

## Willful Infringement

■ A determination of willful infringement requires the Court to examine the totality of circumstances surrounding a defendant's conduct. *Rite–Hite Corp. v. Kelley Co., Inc.,* 819 F.2d 1120, 1125 (Fed.Cir. 1987). The facts must establish a degree of culpability which shows, through clear and convincing evidence, an intent to infringe willfully. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 628 (Fed. Cir.1985). When an infringer receives actual notice of another's patent rights, the infringer bears an affirmative duty to determine whether he is infringing the patent at issue. *Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1579 (Fed.Cir.1986). This duty requires the party to seek and obtain competent legal advice from counsel, even though the party's failure to do so does not mandate a finding of willfulness.

■ The clear and convincing evidence in this case establishes that Visi–Trak knowingly and willfully induced infringement of the patents in suit. When Vann first reviewed the '920 patent in or about 1989, he recognized that the '920 patent claimed a method for die casting monitoring that was similar, if not identical, to the method taught by the sales literature and manual for the Visi–Trak monitoring system. Vann did not seek advice of counsel regarding the scope of the patent or its validity, however, until 1994, and Visi–Trak continued to distribute sales literature and manuals teaching the methods claimed by the patents in suit subsequent to Vann's review of the '920 patent. In fact, Visi–Trak continued its infringing activities up to the conclusion of the trial of this action. Visi–Trak has offered no evidence that it relied upon the advice of counsel in continu-

ing to manufacture and sell its monitoring equipment and to distribute sales literature and manuals teaching the methods claimed by the patents in suit. The Court considers Visi–Trak's failure to offer any colorable defense in this action, whether as to infringement or as to the validity of the patents in suit, when considered in light of defendants' failure to assert an advice of counsel defense, to be compelling evidence that defendants lacked any good-faith basis for their infringing activities. *See Read v. Portec, Inc.,* 970 F.2d 816, 827 (Fed.Cir.1992).

### Damages

#### Reasonable Royalty

 35 U.S.C. § 284 provides that the court shall award damages for infringement "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." To determine the royalty to which Mickowski is entitled, this Court begins with the "willing buyer-willing seller rule." *See Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.), *affirmed as modified,* 446 F.2d 295, 302 (2d Cir.1971). Under this rule, the Court determines the royalty that would have been set in hypothetical negotiations between a willing patent owner and a potential licensee as of the date that defendant's infringement began. *See id.* at 1121.

 In determining the reasonable royalty, the Court may consider other licensing agreements entered into by the plaintiff. However, a license for foreign rather than domestic sales may be afforded less evidentiary weight. *See Trell v. Marlee Electronics Corp.,* 912 F.2d 1443 (Fed.Cir.1990). Similarly, a license entered into in settlement of litigation may not accurately reflect the royalty that the parties would have negotiated prior to commencement of litigation. The Court must also give proper weight to the fact that the parties are direct competitors in the marketplace. *See General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 654, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). A patent owner may be more reluctant to license a patent to a direct competitor and thus charge the competitor a higher rate. *See SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.,* 926 F.2d 1161 (Fed.Cir.1991).

The parties did not dispute at trial the gross revenues of Visi–Trak from sales in the United States of the Visi–Trak monitoring system. As set forth in Plaintiff's Exhibit 43, these sales total $7,825,749 for the period at issue in the litigation. Mickowski testified that he enjoys a profit margin of approximately 50% on sales of die casting monitoring systems in the United States. In addition, Mickowski introduced evidence at trial of his patent license agreements with other manufacturers of die casting monitoring equipment, under which Mickowski has received royalties equal to approximately 15–20% of the gross sales of the licensed monitoring equipment. In light of this evidence, in addition to the fact that Mickowski and Visi–Trak are direct competitors in the manufacture and sale of die casting monitoring systems in the United States, the Court finds a reasonable royalty to be 20% of the gross sales of the Visi–Trak monitoring system.

#### Enhancement of Damages

 Under 35 U.S.C. § 284, damages for patent infringement may be increased up to three times the amount found by the Court. Although a finding of willful infringement by Visi–Trak does not require the Court to award enhanced damages, a finding of willfulness affords sufficient basis for the Court, in the exercise of its discretion, to award enhanced damages. *See Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed.Cir.1992); *Underwater Devices, Inc. v. Morrison–Knudsen Co., Inc.,* 717 F.2d 1380, 1390 (Fed. Cir.1983); *Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1581 (Fed.Cir.1986); *Rite–Hite Corp. v. Kelley Co., Inc.,* 819 F.2d 1120, 1126 (Fed.Cir.1987). The Court finds that, because Visi–Trak has willfully infringed the patents in suit, defendant shall be liable for enhanced damages equal to three times the actual damages found by the Court.

#### Prejudgment Interest

 Prejudgment interest should ordinarily be awarded by the Court in order to

make whole the patent owner, for the patent owner's damages properly include the foregone use of the royalty income of which the patent owner was wrongfully deprived. *See General Motors v. Devex Corp.*, 461 U.S. 648, at 655–56, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). Prejudgment interest should be denied only in extraordinary circumstances. *See id.* In the absence of any showing by Visi–Trak of extraordinary circumstances warranting a denial of prejudgment interest, the Court awards Mickowski prejudgment interest at the prime rate as published by the United States Federal Reserve. Prejudgment interest shall be compounded annually.

### Attorney Fees and Costs

■ Where the Court determines that a patent infringement action constitutes an "exceptional case," the Court may award to plaintiff attorney fees. *See* 35 U.S.C. § 285. A finding of willful infringement by defendants is sufficient basis for a finding that an action constitutes an exceptional case within the meaning of § 285. *See Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1580 (Fed.Cir.1986); *S.C. Johnson & Son. Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201 (Fed.Cir.1986).

Having found that Visi–Trak willfully induced infringement of the patents in suit, the Court finds that this case is exceptional and warrants an award of attorney fees to Mickowski. The Court refers the matter to the designated Magistrate Judge for this action for a determination of the reasonable attorney fees properly awarded to Mickowski. The Court also awards to Mickowski such costs as shall be determined by the Magistrate Judge.

### Injunctive Relief

■ Upon a finding of infringement, the Court may grant the plaintiff injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Although this Court enjoys broad discretion in determining appropriate equitable relief, and injunctions are usually granted upon a finding of infringement, such injunctive relief must be tailored to the particular facts of the case. *See Carborundum Co. v. Molten Metal Equipment Innovations, Inc.*, 72 F.3d

872, 881 (Fed.Cir.1995). Mickowski seeks an injunction against further manufacture or sale by defendants of any die casting monitoring system capable of practicing the methods claimed by the patents in suit. Such injunctive relief, however, would impermissibly expand the scope of Mickowski's patent monopoly by effectively granting Mickowski a monopoly over a product capable of noninfringing uses. *See Rohm & Haas Co. v. Dawson Chem. Co.*, 599 F.2d 685, 703 n. 24 (5th Cir.1979).

The Court having found the patents valid and infringed by defendants, the Court directs that defendants and their officers, agents, employees, successors and assigns, and all those acting on their behalf, shall be enjoined from further publication or distribution of any product manual, sales literature, or other instructional or promotional materials that describe or depict how any product designed, manufactured, sold, or offered for sale by defendants or their officers, agents, employees, successors, or assigns, or anyone acting on their behalf, may be used to practice the methods taught by claim 1 and claim 28 of the patents in suit, and are further enjoined from communicating in any manner to any potential or actual purchaser or user of any such product that such product may be used to practice the methods taught by claim 1 and claim 28 of the patents in suit. Such injunction shall remain in force and effect until the expiration of the term of the patents in suit. Broader injunctive relief is not warranted by the scope of the patents in suit and the facts of this case.

### CONCLUSION

The Court finds Visi–Trak liable for willfully inducing the infringement of the patents in suit and awards Mickowski damages, injunctive and declaratory relief, and attorneys' fees and costs as set forth above. The parties are directed to settle an order consistent with the foregoing within thirty (30) days of the issuance of this Opinion and Order.

It is **SO ORDERED**