**Dr. Paula SMALL, Plaintiff,**

v.

**NOBEL BIOCARE USA, LLC, et al., Defendants.**

No. 06 Civ. 0683 (RJH)(JLC).

United States District Court, S.D. New York.

July 19, 2011.

Alfred Ross Fabricant, Andrew Alan Phillips, Cindy Yang, Dawn L. Rudenko, Lawrence C. Drucker, Peter Lambrianakos, Steven I. Weisburd, Dickstein Shapiro LLP, New York, NY, for Plaintiff.

David M. Kohane, Cole, Schotz, Meisel, Forman & Leonard, P.A., Baldassare Vinti, Bruce E. Fader, Elias Leib Schilowitz, James Holman Shalek, Proskauer Rose LLP, Christopher Allen McLaughlin, Zawacki, Everett & Gray, Michael Edward Treiman, Bernard Malina, Malina & Associates, P.C., New York, NY, Sean M. Murray, Sheila N. Swaroop, Knobbe Martens Olson & Bear LLP, Irvine, CA, David L. De Bruin, Michael Best & Friedrich LLP, Pro Hac, Vice, Alan Becker, Litchfield Cavo, LLP, Joseph F. Marinelli, Fitch, Even, Tabin & Flanner, Gilberto E. Espinoza, Michael Best & Friedrich LLP, Pro Hac, Vice, Chicago, IL, Allen E. Hoover, Fitch, Even, Tabin & Flannery, Boulder, CO, Christopher Dugger, Michael Hurey, Kleinberg & Lerner, LLP, Los Angeles, CA, for Defendants.

### *MEMORANDUM & ORDER*

JAMES L. COTT, United States Magistrate Judge.

Currently before the Court are the requests of Defendants Implant Direct, MFG., LLC, Southern Implants, Inc., Southern Implants (Pty) Ltd., MegaGen USA, Inc., and MegaGen Co., Ltd. (together "Implant Direct") and Defendants Nobel Biocare USA, LLC and Nobel Biocare AB (together "Nobel") for a pre-motion conference regarding a proposed motion to compel the production of a settlement agreement that Plaintiff Dr. Paula Small ("Small") consummated with two former Defendants in this action, Neoss, Inc. and Neoss, Ltd. (together "Neoss") and that Implant Direct and Nobel contend is relevant under Rule 26(b)(1) of the Federal

Rules of Civil Procedure. Having considered the parties' numerous and lengthy letter-briefs on this issue, which are tantamount to motion papers, the Court finds that there is no need for a pre-motion conference. For the reasons that follow, the motion to compel is GRANTED.

## I. BACKGROUND

This is a patent infringement case concerning dental implants. Dr. Small, a prosthodontist and one of the three named inventors of Patent Number RE38,945 (the "'945 Patent"), has asserted claims of the '945 Patent against Implant Direct, Nobel, Camlog USA Inc., and Henry Schein Inc. Neoss was also originally among the named Defendants; however, Small and Neoss resolved their dispute in a confidential settlement agreement (the "Neoss Agreement") and filed a stipulation of dismissal on April 28, 2011, which Judge Holwell endorsed on May 2, 2011 (Dkt. No. 187).

By letter to the Court dated May 27, 2011, Implant Direct seeks to compel the production of the Neoss Agreement, asserting that it is relevant pursuant to Fed. R. Civ. 26(b)(1). Implant Direct's May 27, 2011 Letter. On June 1, 2011, Small responded by letter. Pl.'s June 1, 2011 Letter. On June 20, 2011, Nobel joined Implant Direct in its request for permission to make a motion to compel. Nobel's June 20, 2011 Letter. Small responded one day later. Pl.'s June 21, 2011 Letter. By letter dated June 28, 2011, Implant Direct provided the Court with additional authority that it believes supports its position. Implant Direct's June 28, 2011 Letter. Small responded on July 6, 2011. Pl.'s July 6, 2011 Letter. On July 8, 2011, Nobel sent the Court another letter, contending that since Small seeks testimony from Nobel's 30(b)(6) witnesses concerning, among other things, settlement agreements to which Nobel has been a party, it is disingenuous for Small to argue that the Neoss Agreement is not relevant in this action. Nobel's July 8, 2011 Letter at 1. Finally, Camlog USA, Inc. and Henry Schein, Inc. (together "Camlog") submitted a letter to the Court dated July 15, 2011 joining in Implant Direct and Nobel's application. Camlog's July 15, 2011 Letter.[1]

## II. DISCUSSION

### A. Standards Applying to Discovery of Settlement Agreements

■■■ Although Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement negotiations in light of the strong "public policy favoring the compromise and settlement of disputes," Fed.R.Evid. 408 advisory committee's note (citations omitted), Rule 408 does not apply to discovery. *See, e.g., Conopco, Inc. v. Wein,* No. 05 Civ. 9899(RCC)(THK), 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007); *In re Initial Public Offering Sec. Litig.,* No. 21 MC 92(SAS), 2004 WL 60290, at *4 (S.D.N.Y. Jan. 12, 2004); *ABF Capital Mgmt. v. Askin Capital Mgmt.,* No. 96 Civ. 2978(RWS), 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000). Instead, Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the scope of discovery— that, unless otherwise limited by court order

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, na-

---

**1.** By separate order, the Court will direct the Clerk to file all of these letters and make them part of the record in this case.

ture, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed.R.Civ.P. 26(b)(1). Though district courts in this Circuit have in the past disagreed as to whether discovery of settlement agreements requires a heightened showing of relevance, the majority view is now that no such heightened showing is required. *See Gen. Elec. Co. v. DR Sys., Inc.,* No. 06 Civ. 5581(LDW)(ARL), 2007 WL 1791677, at *1 (E.D.N.Y. June 20, 2007) (discussing split in authority and adopting the view that no heightened relevance showing is required); *ABF Capital Mgmt.,* 2000 WL 191698, at *1 ("Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by [Rule 26], and that no heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement." (citations omitted)). The parties do not dispute this point here. *See* Implant Direct's May 27, 2011 Letter at 2; Pl.'s June 1, 2011 Letter at 1.

■ The burden of demonstrating relevance is on the party seeking discovery. *See, e.g., Callaway Golf Co. v. Corporate Trade Inc.,* No. 10 Civ. 1676(GBD)(JCF), 2011 WL 1642377, at *3 (S.D.N.Y. Apr. 25, 2011). Thus, Implant Direct and Nobel bear that burden here. They assert that the Neoss Agreement is relevant to (1) the issue of damages, *i.e.,* the determination of a reasonable royalty; (2) the infringement

or validity of the '945 Patent; (3) the credibility of Small and her experts; and (4) the credibility of Mr. Cooper and Dr. Marotta, the other named inventors of the '945 Patent. Implant Direct's May 27, 2011 Letter at 2–4; Nobel's June 20, 2011 Letter at 1–2. Further, Nobel asserts that since Small seeks deposition testimony regarding settlement agreements to which Nobel has been a party, it is disingenuous for Small to argue that the Neoss Agreement is not relevant in this action. Nobel's Letter dated July 8, 2011 at 1. The Court turns next to the relevancy of the Neoss Agreement as to the issue of a reasonable royalty.

### B. Relevancy of Settlement Agreements as to a Reasonable Royalty

■ Before deciding whether the Neoss Agreement is relevant as to a reasonable royalty—the issue most hotly contested by the parties here—it is first necessary to explain what a reasonable royalty is. 35 U.S.C. § 284 provides that a patentee who has demonstrated infringement is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." A reasonable royalty "can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970)." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1319 (Fed.Cir.2010). But in litigation it "is often determined on the basis of a hypothetical negotiation, occurring between the parties at the time that infringement began." *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1312 (Fed.Cir.2011) (internal citations omitted). The hypo-

thetical negotiation " 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began,' and 'necessarily involves an element of approximation and uncertainty.' " *Wordtech*, 609 F.3d at 1319 (quoting *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed.Cir. 2009)). A patentee who relies on a prior license agreement to make such a showing must demonstrate that the agreement is "sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs.*, 580 F.3d at 1325. It appears that the hypothetical negotiation approach will be employed in this case. Pl.'s June 1, 2011 Letter at 3, 5; Pl.'s July 6, 2011 Letter at 2.

■ Whether the Neoss Agreement is relevant to the issue of the determination of a reasonable royalty largely turns on the Court's interpretation of a recent decision of the Federal Circuit in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed.Cir.2010), a case in which the Circuit overturned a royalty verdict based on seven licenses—five of which were unrelated to the claimed invention and two of which arose from the litigation.[2] In that decision, the Circuit noted that "the most reliable license in this record arose out of litigation." *Id.* Based on this and other language in the decision, some courts have concluded that settlement agreements are discoverable under Fed.R.Civ.P. 26(b)(1)

or admissible under Fed.R.Evid. 408 as to the issue of a reasonable royalty while others have concluded that they are not. *Compare Fenner Invs., Ltd. v. Hewlett–Packard Co.*, No. 08 Civ. 273, 2010 WL 1727916, at *3 (E.D.Tex. Apr. 28, 2010) (stating that "the recent *ResQNet* decision has not altered the admissibility of agreements entered into under the threat of litigation" and ruling settlement agreements inadmissible because their potential for prejudice and jury confusion "substantially outweigh" their probative value) *with Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, 753 F.Supp.2d 662, 663 (E.D.Tex.2010) (citing cases and granting motion to compel production of settlement agreement) *and Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys.*, No. 05 Civ. 955, 2011 WL 2470460, at **13–15 (M.D.N.C. June 20, 2011) (same).

Implant Direct points to the above-quoted language from *ResQNet* and contends, along with Nobel, that the Federal Circuit has approved of the use of litigation settlements as evidence of the amount of a plaintiff's damages. Implant Direct's May 27, 2011 Letter at 3; Implant Direct's June 28, 2011 Letter at 2; Nobel's June 20, 2011 Letter at 1. Defendants contend that since, as far as they are aware, the Neoss Agreement is the only agreement in which anyone has compensated Small for the '945 Patent, its terms could be relevant in determining the patent's value.

**2.** Where, as here, the determination of a discovery dispute implicates or relates to an issue of substantive patent law, Federal Circuit law applies. *See, e.g., In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1377 (Fed.Cir. 2010) (Federal Circuit law applies to determination of whether lawyer should be denied access to certain information pursuant to protective order's patent prosecution bar because issue unique to patent law); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307–08 (Fed.Cir.2001) (Federal Circuit

law applies to dispute concerning discoverability of negotiations surrounding settlement agreements because settlement agreements implicate substantive patent issue of inequitable conduct); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed.Cir.2000) ("Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, because they relate to an issue of substantive patent law.").

Implant Direct's May 27, 2011 Letter at 3; Nobel's June 20, 2011 Letter at 2. Moreover, Implant Direct argues, in essence, that in opposing production Small confuses admissibility with discoverability, and that her arguments regarding the relevance of the settlement of the Neoss Agreement are best made at a later stage of the litigation. Implant Direct's May 27, 2011 Letter at 3.

Small responds that *ResQNet* stands for the opposite proposition than that proposed by Defendants—that the decision merely reiterates the Federal Circuit's "long standing position that the most reliable hypothetical calculations arise out of situations that do not involve litigation since 'litigation itself can skew the results of the hypothetical negotiation.'" Plaintiff's June 1, 2011 Letter at 3 (quoting *ResQNet,* 594 F.3d at 872). Thus, Small contends, the Neoss Agreement is not relevant under Fed. R. Civ. 26(b)(1) to determining a reasonable royalty. *Id.* The Court's interpretation of *ResQNet* falls somewhere in between those of the parties.

*ResQNet* involved, among other things, a challenge to a district court damages award that relied upon a reasonable royalty rate that had been determined by the patentee's expert. *ResQNet,* 594 F.3d at 868. The Federal Circuit concluded that evidence of royalty rates from five licenses which were unrelated to the invention at issue in the case could not form the basis of a reasonable royalty calculation by the patentee's expert or the damages award of the district court. *Id.* at 870–72. These licenses, the Circuit stated, had no discernible link to the claimed technology, and were used only "to drive the royalty rate up to unjustified double-digit levels." *Id.* at 870. The rates in the licenses, moreover, were

not consistent at all with the other two licenses in the record. Those two 'straight' licenses arose out of litigation over the patents in suit. One of them was a lumpsum payment of stock which [the expert] was unable to analogize to a running royalty rate. The other was an ongoing rate averaging substantially less than 12.5% of revenues[, the average royalty rate calculated by plaintiff's expert].

*Id.* The Circuit thus vacated the damages award and remanded the case to the district court for recalculation of a reasonable royalty, ordering it to "consider the panoply of events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators[,]" and admonishing it not to "rely on unrelated licenses to increase the reasonable royalty rate above rates more clearly linked to the economic demand for the claimed technology." *Id.* at 872–73 (citation and internal quotations omitted). Before doing so, however, the Circuit made the following observation:

[T]he most reliable license in this record arose out of litigation. On other occasions, this court has acknowledged that the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation. Similarly this court has long recognized that a reasonable royalty can be different than a given royalty when, for example, widespread infringement artificially depressed past licenses. And a reasonable royalty may permissibly reflect the fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty.

*Id.* (internal citations, quotations, and alterations omitted). The meaning of this passage is at issue here.

■■ While it is true that "litigation can skew the result of the hypothetical negotiation," *id.* at 872, and that a settlement agreement entered into as a result of litigation may ultimately lack probative value in determining a reasonable royalty, even something ultimately inadmissible is still discoverable under Fed.R.Civ.P. 26(b)(1). Rule 26(b)(1) plainly states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, although it did not address either the discoverability or the admissibility of the litigation licenses that were the "most reliable" as these licensees were already part of the record, the Circuit in *ResQNet* nevertheless appeared to endorse an approach in which the district court—and thus the patentee who bears the burden of establishing damages—considers all information concerning royalty rates for the patent in suit to establish a factual basis for a reasonable royalty. *Id.* at 872–73. A litigation-based settlement agreement for the patent in suit such as the one here falls within that universe of information. In light of *ResQNet,* the Court concludes that the Neoss Agreement, which it has reviewed *in camera,* is relevant to determining a reasonable royalty for purposes of Fed.R.Civ.P. 26(b)(1).

The Court is not alone in its interpretation of *ResQNet* and the decision's impact on the discoverability of litigation-based settlement agreements and other documents related to settlement. *See, e.g., Volumetrics,* 2011 WL 2470460, at *14 (concluding that "*ResQNet.com* forecloses ... [the] contention that' [a]greements reached to resolve patent litigation are not relevant to the calculation of a reasonable royalty' " and granting motion to compel settlement agreement); *MSTG, Inc. v. AT & T Mobility LLC,* No. 08 Civ. 7411, 2011 WL 841437, at *3–4 (N.D.Ill. Mar. 8, 2011)

(on reconsideration, motion to compel settlement communications granted in light of *ResQNet* where communications relevant to demonstrating comparability of litigation-based settlement licenses that could have resulted from communications to patents in suit); *Tyco Healthcare Grp. LP v. E–Z–EM, Inc.,* No. 07 Civ. 262(TJW), 2010 WL 774878, at *2 (E.D.Tex. Mar. 2, 2010) (motion to compel documents related to settlement negotiations granted because "*ResQNet* suggests that the underlying negotiations are relevant to the calculation of a reasonable royalty using the hypothetical negotiation damages model"); *Clear with Computers,* 753 F.Supp.2d at 663–64 (motion to compel documents related to settlement agreements with previous defendants granted where, among other things, settlement agreements likely only licenses of patents at issue in case and patentee has not shown that there are other non-litigation licenses that reflect patent's value).

As for the few district court decisions that have interpreted *ResQNet* differently, they are both factually and legally distinguishable. For instance, *Fenner Investments* involved the admissibility of certain settlement agreements at trial, not the agreements' discoverability. 2010 WL 1727916, at *3. Further, the settlement agreements that the patentee there sought to exclude from introduction at trial involved patents at issue in prior litigations—not the patent at issue in the case. *Id.* The case thus involved a different scenario than that presented here; the Neoss Agreement directly relates to the '945 Patent.

Additionally, though *Software Tree, LLC v. Red Hat, Inc.,* No. 09 Civ. 097, 2010 WL 2788202, at *4 (E.D.Tex. June 24, 2010), did involve a motion to compel documents relating to settlement negotiations, and the court there ultimately denied production of the documents, it based its decision on a

"settlement privilege" that, it stated, applies to negotiations underlying licensing agreements arising out of litigation. Unlike here, discoverability of the settlement agreement was not at issue: the parties in *Software Tree* had already produced the licensing agreement that the parties had entered into as part of their settlement. *Id.* at *1. Further, Small has not asserted that any privilege applies to the Neoss Agreement; even if she made such an argument, it would fail. The Sixth Circuit's decision in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir.2003), which the *Software Tree* court recognized as the origin of the settlement privilege, is of little relevance here. Other Circuit Courts of Appeals and courts in this district "have generally declined to recognize a privilege that would preclude discovery for the purpose of settlements or settlement negotiations." *Newman & Assocs. v. J.K. Harris & Co., LLC*, No. 04 Civ. 9264(RJH)(MHD), 2005 WL 3610140, at *2 (S.D.N.Y. Dec. 15, 2005) (collecting cases).

 Small cites a number of cases in support of her assertion that "[c]ourts have long held that litigation-based settlement licenses are not relevant to determining a reasonable royalty in patent infringement cases." Pl.'s June 1, 2011 Letter, at 3. Yet each of these cases either does not stand for this proposition or is distinguishable.[3] First, as discussed above, *ResQNet* does not stand for the proposition that litigation-based settlements are not relevant; instead, it merely cautions that such settlements may be of minimal relevance in light of the possibility that litigation can skew the results of a hypothetical negotiation. *See ResQNet*, 594 F.3d at 872. Next, Small makes much of the language in the court's decision in *Cornell University v. Hewlett-Packard Co.*, No. 01 Civ. 1974, 2008 U.S. Dist. LEXIS 39343, at *14 (N.D.N.Y. May 27, 2008), that "offers and license amounts [that were part of settlement discussions between the parties] were eroded by litigation and are therefore irrelevant and inadmissible." But *Hewlett-Packard* involved the admissibility of the offers and license amounts under Rule 402 of the Federal Rule of Evidence in the context of various motions *in limine* before trial—not, as here, discoverability under Fed.R.Civ.P. 26(b)(1). The Federal Circuit has made clear that "[r]elevance under Rule 26(b)(1) is construed more broadly for discovery than for trial." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed.Cir.1987) (citations omitted). Indeed, as Small herself emphasizes, "the issue here is *discoverability based on relevance*, not *admissibility*." Pl.'s June 1, 2011 Letter at 6.

---

**3.** Also distinguishable is *Rude v. Westcott*, 130 U.S. 152, 9 S.Ct. 463, 32 L.Ed. 888 (1889), also cited by Small. There, the Supreme Court stated that "[i]t is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Rude*, 130 U.S. at 164, 9 S.Ct. 463. However, the rule stated in *Rude* governs the probative value of a settlement agreement, not its admissibility or discoverability. *See, e.g., Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557 & n. 5 (Fed.Cir. 1983) (no error in district court's ruling that *Rude* governs probative value or weight to be given to a license paid after onset of complained infringement); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1571 (Fed.Cir.1988) (*Rude* establishes no bright-line rule regarding admissibility); *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, Nos. 01 Civ. 0736, 01 Civ. 5825, 2004 WL 1899927, at *30 (N.D.Ill. Aug. 23, 2004) ("*Rude* governs the weight, not the admissibility of such license evidence in a reasonable royalty analysis. Courts have recognized that the trier of fact may properly consider the context in which the license was reached in weighing the probative value of such evidence.") (citations omitted).

Finally, the two district court decisions from the Second Circuit upon which Small relies, *DR Systems* and *Mickowski,* are unavailing. *Mickowski* merely contains language similar to the uncontroversial language that Small points to in *ResQNet.* See *Mickowski v. Visi–Trak Corp.,* 36 F.Supp.2d 171, 181 (S.D.N.Y.1999) ("[A] license entered into in settlement of litigation may not accurately reflect the royalty that the parties would have negotiated prior to commencement of litigation."). The *Mickowski* court did not conclude that litigation-based settlement licenses are not relevant to a reasonable royalty. The same is true of *DR Systems.* Although the court there did state that "settlement agreements reached to resolve litigation or threatened litigation are generally not relevant to the issue of what may constitute a reasonable royalty[,]" it denied the motion to compel the settlement agreement at issue in that case, in part, because the agreement concerned a patent other than the one at issue in the case and its relevance was therefore "remote at best." *DR Sys.,* 2007 WL 1791677, at *2. By contrast, the Neoss Agreement concerns the '945 Patent.[4]

In sum, though Small makes many arguments regarding the relevance of the Neoss Agreement that may well prove to be successful in excluding it from the evidence presented at any trial in this case, they are insufficient to overcome Defendants' arguments regarding discoverability at this stage of the litigation. Accordingly, the Court concludes that the Neoss Agreement is relevant to determining a reasonable royalty for purposes of Fed.R.Civ.P. 26(b)(1), and therefore must be produced. In light of this conclusion, the Court need not address Defendants' other arguments.

## III. CONCLUSION

Defendants' motion to compel production of the Neoss Agreement is GRANTED. Within 14 days of the entry of this Order, Small shall produce the Neoss Agreement to Implant Direct, Nobel, and Camlog consistent with the terms of the Stipulated Protective Order (Dkt. No 148).

**SO ORDERED.**

---

4. Small also argues that "[t]o allow the production of settlement agreements to Defendants relating to other Defendants in an ongoing dispute, without any reasonable justification as to why such arguments would be relevant, will only serve to adversely effect [sic] and hinder future settlement discussions in this litigation." Pl.'s June 21, 2011 Ltr. at 4. While the Court is mindful of these legitimate concerns, it does not believe that they should carry the day. As the *Volumetrics* court concluded in analogous circumstances, Small has not demonstrated that "losing [her] asymmetrical knowledge advantage will work an injustice," and it may in the end "promote[] settlement and justice." *Volumetrics,* 2011 WL 2470460, at *15 (citation omitted).